STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul T. RICE, Defendant-Appellant.

Court of Appeals

*No. 2007AP516–CR. Submitted on briefs November 6, 2007.
—Decided December 18, 2007.*

2008 WI App 10

(Also reported in 743 N.W.2d 517.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael K. Gould,* assistant state public defender, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Paul Rice appeals a judgment of conviction for two counts of burglary and one count of bail jumping, and an order denying his motion for postconviction relief. He argues he is entitled to a new trial on the two burglary charges because the State violated WIS. STAT. § 971.23,[1] the discovery statute, by adding a witness on the first morning of trial and not disclosing the witness's criminal record. He also argues there was insufficient evidence to support the bail jumping charge because he was acquitted of the burglary that charge was based on.

¶ 2. We conclude the State showed good cause for its late disclosure that it intended to call the witness, and therefore the court was not required to exclude the witness's testimony. In addition, while the State's failure to disclose the witness's criminal record violated WIS. STAT. § 971.23, that violation was harmless. Finally, whether the evidence is sufficient to support a conviction is decided independently of jury verdicts on related charges. Accordingly, we affirm the judgment and order.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

## BACKGROUND

¶ 3. In February 2005, the State filed a complaint charging Rice with three counts of burglary and one count of felony bail jumping, all as a repeater. The three burglary charges involved separate break-ins at homes owned by Kathleen Kaye, Carolyn Kellogg, and Barbara Ostrand. The Kaye burglary took place January 19, 2005. The Kellogg and Ostrand burglaries took place about January 27 and 30, respectively. The bail jumping charge alleged Rice had violated the conditions of his bond by committing a crime on or about January 19, 2005, but did not specifically refer to any particular burglary. An Information containing the same four charges was filed in September 2005.

¶ 4. Rice filed a demand for discovery and inspection. The demand included a copy of the criminal record of any prosecution witness and the "names and addresses of all persons known to the state [sic] to have witnessed any matter related to this case."

¶ 5. The case was tried beginning on October 18, 2005. The State's case included evidence that two sets of footprints had been found in the snow at the scene of the Kellogg and Ostrand burglaries.[2] Those footprints were, according to the detective at the scene, consistent with shoes belonging to Rice and another man named Paul Bright. In addition, a footprint consistent with one of Rice's shoes was found on an envelope at the Kellogg burglary.

¶ 6. A safe containing about $2,600, mostly in $100 bills, was taken during the Ostrand burglary. It was discovered broken open and dumped in a Door

---

[2] For clarity, only evidence related to the charges Rice was convicted of is set out here.

County park. The park was near a house where Rice's ex-girlfriend, Stephanie Nicholson, lived. Rice spent several nights at Nicholson's house around the time of the burglaries. A hammer and pry bar, both with powder on them similar to fire-retardant powder from the safe, were found in a shed at the Nicholson residence. Nicholson testified Rice gave her a cordless phone and DVD player. Those items matched property taken in the Kellogg and Ostrand burglaries, and were recovered from Nicholson's residence.

¶ 7. A Door County sheriff's deputy, Troy Montevideo, testified he observed a suspicious minivan around midnight on the night of February 1. Montevideo found the minivan parked at the end of a driveway with its lights off on a rural road. Rice was the driver, and Bright the passenger. Rice told Montevideo they had stopped to have a conversation because he could not concentrate on driving and talking at the same time. During a consent search of the van, Montevideo found a pry bar, a small sledge hammer, gloves, a black mask, a screwdriver, a cordless phone, and a backpack full of DVDs. The phone and titles of some of the DVDs matched items taken in the Kellogg burglary. Rice claimed ownership of the backpack but said none of the other items in the van belonged to him. The items were not seized. Montevideo said he believed the hammer and pry bar were the same items later found during the search of Nicholson's residence.

¶ 8. Finally, the State called Christopher LeFevre, an employee at a local family-owned auto repair shop. LeFevre testified he sold Rice the minivan Rice was driving when he was stopped by Montevideo. LeFevre said Rice and Bright were both present when LeFevre sold Rice the minivan, and Rice paid the $300 purchase price with three $100 bills from a wad of cash in his

pocket. LeFevre guessed the wad totaled about $800. The date of the sale was established from other testimony as January 31, the day after the Ostrand burglary.

¶ 9. On the morning of the first day of trial, Rice objected to LeFevre being allowed to testify, arguing the State had not indicated it would call LeFevre until that morning. The prosecutor admitted LeFevre had not been on the State's witness list, but said he first realized LeFevre might have valuable information while preparing for trial the day before. The prosecutor first learned the substance of LeFevre's testimony on the morning of trial, and immediately told the defense he intended to call LeFevre as a witness. The court denied Rice's motion on the condition that the State make LeFevre available for an interview during the noon hour of the first day of trial.

¶ 10. The jury found Rice guilty of the Ostrand and Kellogg burglaries and the bail jumping charge but acquitted him of the Kaye burglary. Rice filed a postconviction motion alleging, among other things, that LeFevre should not have been permitted to testify because he was not on the State's witness list. The motion also alleged LeFevre had eight prior convictions not disclosed by the State that could have been used to impeach him.[3]

¶ 11. At the postconviction hearing, the State conceded it failed to comply with Wis. Stat. § 971.23 by failing to provide the defense with a copy of LeFevre's criminal record, and it did not have good cause for its

---

[3] At the postconviction hearing, the State suggested LeFevre's number of convictions for impeachment purposes would actually have been two because six of the convictions were for old, relatively minor or traffic offenses. The State does not renew this argument on appeal.

omission. The parties disagreed whether the discovery violation was harmless, and whether the court erred when it allowed LeFevre to testify at all.

¶ 12. The circuit court reaffirmed its decision to allow LeFevre to testify. The court held the defense's inability to impeach LeFevre with his convictions was harmless because LeFevre's testimony was limited and not disputed, and the facts LeFevre testified to—that Rice paid for the van with three $100 bills—"were only significant in the context of other evidence . . . ." The court also noted there was significant other evidence against Rice in both cases, including the boot prints in the snow, the physical evidence at the scene, and the stolen property and burglary tools found in Rice's possession. The court concluded that in the context of all the evidence, LeFevre's convictions were insignificant, and denied Rice's motion.

DISCUSSION

## I. LeFevre's testimony

¶ 13. Rice first argues he is entitled to a new trial based on the State's failure to name LeFevre as a witness until the first morning of trial. A district attorney must disclose on demand a "list of all witnesses and their addresses whom the district attorney intends to call at trial." WIS. STAT. § 971.23(1)(d). The State has a continuing duty to disclose material that fits within the scope of a demand. WIS. STAT. § 971.23(7).

¶ 14. We analyze alleged discovery violations in three steps, each of which poses a question of law reviewed without deference. *State v. DeLao*, 2002 WI 49, ¶¶ 14–15, 252 Wis. 2d 289, 643 N.W.2d 480. First,

342

we decide whether the State failed to disclose information it was required to disclose under WIS. STAT. § 971.23(1). Next, we decide whether the State had good cause for any failure to disclose under § 971.23(1). *Id.*, ¶ 15. Absent good cause, the undisclosed evidence must be excluded. However, if good cause exists, the circuit court may admit the evidence and grant other relief, such as a continuance. *Id.*, ¶ 51; WIS. STAT. § 971.23(7m). Finally, if evidence should have been excluded under the first two steps, we decide whether admission of the evidence was harmless. *DeLao*, 252 Wis. 2d 289, ¶ 59.

■

¶ 15. We conclude that even assuming the State was required to disclose LeFevre as a witness earlier under WIS. STAT. § 971.23(1)(d), it has shown good cause for that omission.[4] The circuit court therefore did not err in allowing LeFevre to testify.

■

¶ 16. Whether good cause exists is an objective inquiry. *DeLao*, 252 Wis. 2d 289, ¶ 52. We first determine whether the State acted in good faith. *Id.*, ¶ 53. In addition to good faith, the State has the burden of establishing good cause by providing a specific reason for the lack of disclosure. *Id.*, ¶¶ 55–56.

¶ 17. Here, the prosecutor told the court the only mention of LeFevre in documents from the police investigation was that he sold a van to Rice. The day

---

[4] We therefore need not decide whether the State violated its discovery obligations or whether its late disclosure was harmless. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

343

before trial, the prosecutor was preparing the case for trial and realized Rice had purchased the van shortly after the Ostrand burglary. Because $2,600 in cash was taken in the Ostrand burglary, the prosecutor realized the van might have been purchased with the Ostrand burglary proceeds. By that time, the officer assigned to the case was already gone for the day, so the prosecutor asked him to call LeFevre at work the next morning, the first morning of trial. It was only after the officer talked to LeFevre that the prosecutor learned LeFevre's testimony would be useful at trial.

¶ 18. This explanation established both good faith and a specific, reasonable explanation for the late notice. *See id.*, ¶¶ 53, 56. This case involved three separate burglaries, all proven through numerous pieces of circumstantial evidence. The State ultimately called thirteen witnesses in addition to LeFevre, many of whom testified to only a small piece of the overall picture. In view of the complexity of the case, it is understandable that the potential significance of LeFevre's testimony was overlooked during the initial investigation, and only uncovered while the prosecutor was preparing the case for trial. The State therefore met its burden of proving just cause, and the court properly admitted the evidence subject to conditions designed to ameliorate the effects of the late notice on Rice. *See id.*, ¶ 51.

## II. LeFevre's criminal record

■

¶ 19. Rice next argues he is entitled to a new trial because the State did not disclose LeFevre's criminal record. The State concedes it violated Wis. Stat. § 971.23 by not disclosing LeFevre's record, and it did

not have good cause for the violation.[5] The only remaining question, then, is whether the discovery violation was prejudicial or harmless. *See DeLao*, 252 Wis. 2d 289, ¶ 60.[6] A violation is harmless when there is no "reasonable possibility" that the violation contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). In other words, the error must be "sufficient to undermine our confidence in the outcome" of the trial. *DeLao*, 252 Wis. 2d 289, ¶ 59 n.10.

¶ 20. In this case, the defense was unable to impeach LeFevre with his convictions because of the discovery violation. A new trial is required, then, if there is a "reasonable possibility" of a not guilty verdict had the jury learned of LeFevre's convictions. We conclude no such possibility exists here.

¶ 21. First, we have no quarrel with Rice's position that LeFevre's testimony was important in the context of the entire case. LeFevre was unconnected to any of the defendants, had no way of knowing the significance of his testimony, and yet provided a simple fact that tied in with the prosecution's theory. While LeFevre's testimony was by no means the only evidence tying Rice to the burglaries, we agree it was an important piece of the State's circumstantial case.

¶ 22. However, the same things that made LeFevre's testimony so important also made his criminal

---

[5] The State must disclose the "criminal record of a prosecution witness which is known to the district attorney." WIS. STAT. § 971.23(1)(f).

[6] The court in *DeLao*, while noting that some small difference may exist between "prejudicial" and "harmless" error tests, ultimately applied the harmless error standard found in *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). *See State v. DeLao*, 2002 WI 49, ¶ 59 n.10, 252 Wis. 2d 289, 643 N.W.2d 480. We do likewise.

convictions relatively unimportant. LeFevre was involved in the case simply by happenstance and, as the circuit court noted, he testified to facts that "were only significant in the context of other evidence . . . ." As a result, LeFevre did not have the knowledge, motive, or opportunity to fabricate his testimony. While LeFevre's criminal convictions might have established an above average willingness to lie, a jury would not conclude he was actually lying without some indication he had the knowledge, motive or opportunity to do so.

■

¶ 23. Rice argues criminal convictions are relevant to credibility under WIS. STAT. § 906.09, and the jury therefore could have chosen to reject LeFevre's testimony had his convictions been disclosed. However, our task on review is to look to "the totality of the record" to determine whether an error is harmless. *Dyess*, 124 Wis. 2d at 547. Simply because a jury would have been permitted to hear evidence does not mean the jury would have reached a different verdict because of it.

■

¶ 24. Instead, like other evidence of a witness's willingness to lie, the value of impeachment with criminal convictions may vary widely depending on the surrounding facts and circumstances. In some cases, convictions and similar evidence may be extremely probative; given the pick of an alibi witness, few defendants would choose a relative with ten convictions over a local minister with a clean record. But in other cases, convictions may be of minimal impeachment value. It is not clear that a bystander who witnesses a car accident, for example, is any less credible because of a criminal record. Here, as explained above, LeFevre's criminal convictions had very little connection to the value of his

testimony. For that reason, there is no "reasonable possibility" that the State's discovery violation contributed to the conviction. *See Dyess*, 124 Wis. 2d at 543.

### III. The bail jumping charge

¶ 25. Rice argues there is insufficient evidence to support the bail jumping charge. The Information alleged that "on or about" January 19, 2005, Rice had been on bond in a different case and had intentionally failed to comply with his bond conditions. January 19, 2005, was the date of the Kaye burglary. Rice argues the bail jumping conviction was based on the Kaye burglary, and because he was acquitted of the Kaye burglary the bail jumping charge must be dismissed as well.

¶ 26. Rice's argument is contrary to *United States v. Powell*, 469 U.S. 57 (1984).[7] Powell was charged with conspiracy to possess cocaine with intent to distribute and using a telephone in furtherance of the conspiracy. *Id.* at 59–60. To find Powell guilty of the telephone charge, the jury had to find all the elements of the underlying conspiracy charge. *Id.* at 60. The jury acquitted Powell of the underlying conspiracy charge but convicted her of the telephone charge. *Id.* The Court upheld the conviction, even though the verdicts were inconsistent:

> [I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense.

---

[7] The fact pattern in *United States v. Powell*, 469 U.S. 57 (1984), is substantially the same as that in *State v. Thomas*, 161 Wis. 2d 616, 468 N.W.2d 729 (Ct. App. 1991), which relies on *Powell* and comes to the same result.

347

> It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.
>
> . . . .
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Id.* at 65. The Court went on to hold that sufficiency of the evidence review was "independent of the jury's determination that evidence on another count was insufficient[]" and therefore was not a basis for overturning Powell's conviction. *Id.* at 67.

¶ 27. The same rationale applies here. In order to convict on the bail jumping charge the jury had to find all the elements of the Kaye burglary and the additional elements of bail jumping. The jury convicted Rice of bail jumping, which is inconsistent with its verdict acquitting him of the Kaye burglary. However, under *Powell*, this is permissible, since we do not know whether the State or Rice received the benefit of the inconsistent verdict. *See id.* at 65. The only question is whether there was sufficient evidence on which a jury could find all the elements of the Kaye burglary. *See id.* at 67. Rice does not argue the evidence was lacking in this regard.

¶ 28. Rice instead relies on *State v. Hansford*, 219 Wis. 2d 226, 580 N.W.2d 171 (1998). *Hansford*, however, did not involve inconsistent jury verdicts. Instead, the

underlying charge in *Hansford*, obstructing an officer, was tried to a jury. *Id.* at 233. Hansford waived his right to a jury trial on the bail jumping charge and stipulated that he was on bond at the time of the underlying offense. *Id.* at 244. After the jury convicted him of obstructing, the court found him guilty of bail jumping, relying on his obstructing conviction and his stipulation. *Id.* The supreme court reversed the obstructing conviction on an unrelated ground, and held that because the obstructing charge was reversed, there was no longer sufficient evidence to support Hansford's bail jumping conviction. *Id.* at 243–44.

¶ 29. The court in *Hansford*, then, did not involve inconsistent verdicts by the same jury, as in *Powell*. Instead, it involved two sequential verdicts, where the first verdict itself, rather than independent evidence, supported the second conviction. In that situation, the court held that reversal of the first conviction required reversal of the second as well. *Hansford* therefore did not set out any exception to *Powell*, or even address the same question.

*By the Court.*—Judgment and order affirmed.