PER CURIAM.
¶ 1 Phillip T. Bailey appeals a judgment of conviction entered after a jury found him guilty of possessing a firearm while a felon. The sole issue on appeal is whether the evidence was sufficient to sustain the conviction. We affirm.
¶ 2 The State charged Bailey with four crimes, two of which are relevant here: disorderly conduct by use of a dangerous weapon, and possession of a firearm while a felon, both based on his alleged actions of May 29, 2014.[1] The matters proceeded to a jury trial. The jury found Bailey guilty of possessing a firearm while a felon on May 29, 2014, and otherwise acquitted him. He challenges the sufficiency of the evidence supporting the conviction.
¶ 3 Whether evidence was sufficient to support a conviction is a question of law that we review de novo . See State v. Smith , 2012 WI 91, ¶ 24, 342 Wis. 2d 710, 817 N.W.2d 410. Our review is "highly deferential." See State v. Rowan , 2012 WI 60, ¶ 5, 341 Wis. 2d 281, 814 N.W.2d 854.
[A]n appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.
... We give great deference to the determination of the trier of fact. We must examine the record to find facts that support upholding the jury's decision to convict.
Id. , ¶ 5 n.6 (citation and one set of quotation marks omitted). Moreover,
[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.
State v. Poellinger , 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).
¶ 4 In this case, before the jury could convict Bailey of possessing a firearm while a felon on May 29, 2014, the State was required to prove two elements beyond a reasonable doubt: first, that Bailey possessed a firearm on May 29, 2014; and second, that he had been convicted of a felony before that date. See WIS JI- CRIMINAL 1343. Bailey stipulated to the second element, so the only fact in dispute as to this charge was whether he possessed a firearm.
¶ 5 Two of the State's witnesses were S.B. and P.N., who lived in the same apartment building. S.B. was Bailey's girlfriend, and she was also the mother of P.N.'s grandchild as a result of a prior romantic relationship. The State presented evidence that on May 29, 2014, P.N. went to S.B.'s apartment to see her grandchild, but Bailey was present and refused P.N.'s request for a visit. Bailey and P.N. argued, and Bailey threatened to shoot P.N. P.N. testified that after she returned to her apartment, she heard a gunshot. She walked onto her second-floor balcony, which looks out over a parking lot. There, she saw "Bailey standing outside just shooting up in the air." He fired approximately ten shots, then put the handgun into the trunk of S.B.'s "black little car" and drove away.
¶ 6 The State also presented evidence that soon after P.N. saw Bailey drive away from the scene of the shooting, police arrived at the apartment building in response to a complaint that shots had been fired. About thirty minutes later, Bailey returned to S.B.'s apartment, and police obtained permission from S.B. to search her black Nissan Sentra. During the search, an officer found a Taurus brand nine-millimeter handgun and a box of nine-millimeter ammunition in the trunk. Police also found nine-millimeter shell casings on the ground in the parking lot. An expert from the Wisconsin State Crime Laboratory testified that he examined the handgun and the casings and determined that some of the casings were "fired in the Taurus" handgun.
¶ 7 Police arrested Bailey. The evidence showed that while he was in jail, he called S.B. and asked her to tell police that the gun was hers. S.B. testified, however, that she never owned a gun and that she declined to say otherwise for fear that she would get caught making a false statement.
¶ 8 Police collected DNA from Bailey while he was in jail. Two days after the collection, Bailey placed a recorded call from the jail to a person identified as Ricky. The State played portions of the recording in the courtroom. Bailey asked if Ricky had "wiped that joint down." Ricky said he had not, and Bailey asked "do you think our stuff's on there, my stuff's on there?" In response, Ricky referred to Bailey as "the main one with it." A police officer testified to his belief that, taking into account the context of the conversation, Bailey was talking about a gun when he referred to wiping down a "joint."
¶ 9 In light of the foregoing, we reject Bailey's contention that the evidence was insufficient to sustain the jury's finding that Bailey possessed a handgun on May 29, 2014. An eyewitness, P.N., testified that she saw him with a gun that day. That testimony alone was sufficient to sustain the verdict. See Lemerond v. State , 44 Wis. 2d 158, 162, 170 N.W.2d 700 (1969).
¶ 10 Bailey disagrees, asserting that the jury could not rely on P.N. because she was not credible. In support, he first points to several alleged discrepancies between her testimony and that of other witnesses. This argument is unavailing. The jury, not this court, assesses the credibility of witnesses and resolves inconsistencies in the testimony, and we defer to those assessments unless the evidence is patently or inherently incredible. See State v. Saunder , 196 Wis. 2d 45, 54, 538 N.W.2d 546 (Ct. App. 1995). Bailey responds that deference to the jury is unwarranted here. In his view, P.N. was an inherently incredible witness because she testified that she had cataracts and that she was not wearing her glasses when she saw Bailey fire the gun. We are not persuaded.
¶ 11 "Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts." Simos v. State , 53 Wis. 2d 493, 495-96, 192 N.W.2d 877 (1972) (quotation marks and footnote omitted). Here, the record does not support a determination that P.N. was so visually impaired without her glasses that her testimony was incredible as a matter of law. Indeed, the trial included several impromptu demonstrations of P.N.'s visual acuity from which the jury could decide for itself whether to believe her when she described what she saw without her glasses.
¶ 12 The State asked P.N. at the outset of her direct testimony whether she knew Bailey, and in response she pointed to him in the courtroom and described what he was wearing. During cross-examination, when defense counsel showed P.N. a transcript of a prior hearing, she said she did not have her glasses with her and could not read the text. Defense counsel then demanded to know how far she could see and challenged her to count how many fingers he was holding up in the courtroom. She complied. The record thus reflects that P.N. was capable of making observations without her glasses, and the jury alone had the obligation to decide how much, if any, weight to give the eyewitness testimony she offered. See Saunders , 196 Wis. 2d at 54.
¶ 13 Moreover, the State presented evidence that corroborated P.N.'s testimony and supported a finding that Bailey possessed a firearm on May 29, 2014. First, police found a pistol in the trunk of S.B.'s car on that date. The jury could reasonably infer that the pistol found in the trunk was the same handgun that P.N. said she saw Bailey place in that very spot approximately half an hour before police searched the car. See Smith , 342 Wis. 2d 710, ¶¶ 30-31 (emphasizing that appellate courts must defer to reasonable inferences that juries draw). Second, police found shell casings in the area where P.N. saw Bailey fire the gun. The casings matched the gun found in the trunk, again supporting the inference that Bailey possessed the gun that P.N. saw him firing and then stowing in S.B.'s car. Third, the State presented evidence of Bailey's telephone call to S.B. asking her to tell the police that she owned the gun found in her car. A jury may consider evidence of efforts to influence the testimony of a witness as an admission by conduct and consciousness of guilt. See Price v. State , 37 Wis. 2d 117, 132, 154 N.W.2d 222 (1967). Fourth, Bailey called a third party two days after police collected Bailey's DNA. In that conversation, Bailey expressed concern about whether his "stuff" was on the gun and asked about wiping down the "joint." Evidence of efforts to tamper with an item that might inculpate the defendant is also relevant to consciousness of guilt. See State v. Mercer , 2010 WI App 47, ¶ 44, 324 Wis. 2d 506, 782 N.W.2d 125.
¶ 14 Bailey nonetheless argues that the evidence was insufficient to convict him because, he says, the jury acquitted him of disorderly conduct by use of a dangerous weapon, and therefore "the jury did not believe that [he] was actually firing the gun ... [on] May 29, 2014." Bailey's contention is, in effect, that the jury rendered inconsistent verdicts. That contention does not aid him. This court reviews the sufficiency of evidence supporting a conviction on one count independently of whether the jury determined that evidence on another count was insufficient. See State v. Rice , 2008 WI App 10, ¶ 26, 307 Wis. 2d 335, 743 N.W.2d 517. Therefore, a jury may convict a defendant of one crime while inconsistently acquitting the defendant of another crime, and we will uphold the conviction as long as the record contains sufficient evidence to support the conviction.[2] ibr.US_Case_Law.Schema.Case_Body:v1">See id. , ¶ 27.
¶ 15 We have explained that P.N.'s eyewitness testimony was not inherently incredible and alone was sufficient to support Bailey's conviction. The corroborating evidence further supports the verdict. We affirm.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

The other two charges were based on actions that allegedly occurred on earlier dates.

For the sake of completeness, we add that we see no inherent inconsistency in acquitting Bailey of disorderly conduct by use of a dangerous weapon while convicting him of possessing a firearm while a felon. The circuit court instructed the jury, in conformity with Wis JI-Criminal 1900 & 990, that before the jury could convict Bailey of disorderly conduct by use of a dangerous weapon, the State must prove, inter alia , that Bailey "engaged in violent or otherwise disorderly conduct" and that he did so "while using ... and/or possessing a dangerous weapon." The circuit court went on to tell the jury that the phrase " 'otherwise disorderly conduct' means conduct having a tendency to disrupt good order and provoke a disturbance ... [and] includes all acts and conduct as are of a nature to corrupt the public morals or to outrage the sense of public decency." In light of these instructions, we conclude that the jury could make consistent determinations both that P.N. accurately described Bailey's conduct on May 29, 2014, and that the conduct she described-firing a gun into the air-was not itself violent, disruptive, provoking, or of a nature to corrupt public morals or outrage public decency.