COURT OF APPEALS
DECISION
DATED AND FILED

April 20, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP665-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2015CF1336**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

CHRISTOPHER WILLIAM JOHN CALEY,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Brown County: KENDALL M. KELLEY, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Christopher Caley appeals from a judgment of conviction for eleven counts of capturing an image of nudity on camera without

consent of the victims, contrary to WIS. STAT. § 942.09(2)(am)1. (2019-20),[1] and for one count of disorderly conduct. Caley also appeals an order denying his postconviction motion seeking sentence modification, or, in the alternative, resentencing. Caley contends the circuit court erred at sentencing by relying on speculative testimony that overstated the number of potential victims to Caley's crimes. Caley also contends the State violated its discovery obligations by not disclosing to him prior to sentencing the basis for its witness's testimony estimating the number of his victims. Finally, Caley claims that there were actually a lower number of victims than was evidenced at sentencing, which is a new factor justifying a modification of his sentence. We reject Caley's arguments and affirm.

## BACKGROUND

¶2 A tanning salon employee made a report to the Brown County Sheriff's Office that Caley had tried to take a picture of a female salon customer while she was undressing in a tanning room. Caley was charged with one count of capturing an image of nudity without consent, and with one count of disorderly conduct. The Brown County Sheriff's Office subsequently obtained warrants to search Caley's electronic devices and discovered they contained a large number of recordings and images of naked women—taken at tanning salons or at Caley's apartment. Given the nature of the recordings, they appeared to have been made without the victims' consents. As a result, the State charged Caley with ten

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

additional counts of capturing an image of nudity without consent. Caley pled no contest to all twelve charges.

¶3 The lead investigator on the case, sergeant Zachary Holschbach, testified at Caley's sentencing hearing. Holschbach testified that once Caley's charges became known to the public, Holschbach was inundated with communications from victims and potential victims of Caley's crimes—receiving hundreds of phone calls, emails, and in-person visits regarding Caley's actions. Holschbach testified that he was still being contacted by victims "to this day."

¶4 Holschbach went on to describe the large number of nude photos and videos of apparent victims that were found on Caley's phones and laptop—but noted that his department had not been able to identify all of the people involved. The district attorney followed up, asking, "Approximately how many victims, based on what you viewed, would you say there were?" Holschbach replied, "I could safely say there was over a hundred. There was hundreds, in excess of 200 different videos." Holschbach further stated that some victims appeared in more than one video. Holschbach also testified that it was safe to say that based on the people who had been identified or had contacted him that "more people did not want to be involved than did." Holschbach testified that he determined Caley had been engaging in this behavior since at least 2012.

¶5 After hearing testimony from other witnesses, the circuit court discussed its sentencing objectives. It explained that its most important general objective was the protection of the community, but that it had also considered deterrence, punishment, and rehabilitation in crafting Caley's sentence. The court then considered the "aggravated nature of these offenses," stating that they were:

> Aggravated substantially by the sheer volume of what is involved here. Stunning level of victims, particularly looking in terms of the lack of a prior record, and so it is clearly aggravating to each offense that this was a pattern and practice or even a lifestyle, so that is, from the court's consideration, an aggravating factor.

¶6 The circuit court further explained the harmful impact that Caley's actions had on the community and on his unsuspecting and unwilling victims, many of whom would be affected for life. The court clarified that the uncharged offenses and potential victims disclosed in Holschbach's testimony helped in "providing context" when considering Caley's charges, but the court made it clear that it did not rely on those uncharged offenses as factual "because they're not actually before the court today." The court imposed a sentence consisting of a total of eight years' initial confinement and fourteen years' extended supervision.

¶7 Caley then sought postconviction relief challenging the circuit court's sentence and requesting discovery of the evidence that supported Holschbach's testimony that Caley had victimized over one hundred women. Caley made three claims: (1) that the court relied on inaccurate information as a result of Holschbach's testimony that Caley had victimized "over a hundred women"; (2) that the State violated Caley's constitutional rights by not disclosing the basis for Holschbach's estimate before the sentencing hearing; and (3) that Caley's not having actually victimized over one hundred women is a new factor warranting a modification of his sentence.

¶8 In response to Caley's discovery request and before the motion hearing, the State provided Caley's investigators with access to all of its recovered media, totaling "237 videos and 113 pictures." The State confirmed to Caley's attorney that "[f]rom these videos/photos alone, we identified 78 independent

victims." Of those, the sheriff's department was able to positively identify twenty-four of the victims.

¶9 After Caley's investigators viewed the discovery, the circuit court held a hearing on Caley's motion, and Holschbach testified for a second time. Holschbach explained that his testimony in the sentencing hearing was merely an estimate based on the large number of victims involved in the case, and that it was not exclusively based upon what was identified on the review of Caley's devices. Holschbach emphasized that his estimate was based on "all the materials [he] viewed," which included the people who "called, emailed, [and] came into the lobby." He testified that he believed there were more than just the seventy-eight victims identified by the State from Caley's devices.

¶10 The circuit court rejected Caley's arguments. The court first determined that Holschbach was asked to estimate "approximately" how many victims were involved in the case, and that Holschbach's estimate was close to the number of victims identified in the State's discovery review. The court then found that it would have considered the number of victims an aggravated factor on sentencing even with numbers far fewer than what either party had identified. The court stated that although Holschbach's testimony had provided context for its sentencing decision, the court did not rely upon the specific number to which Holschbach testified. The court further stated that it would not have made sense in an ongoing investigation to demand an exact number of victims on an issue providing context for the court's sentencing decision.

¶11 The circuit court went on to note that the "uncontroverted" number of victims was at least seventy-eight based on both parties' arguments. Being an approximate number, the court stated that "100, frankly, isn't that far from 78,

especially for this type of an offense [which is] a violation of the dignity of people." The court explained"[a]nything over 40, in the court's view, is stunning. 41 would be stunning. 50 would be stunning. 78 would be stunning. 100 would be stunning. 200 would be stunning." According to the court, any of those high numbers of victims transformed the offense from being the result of "one or two decisions" or "just a bad day" into engaging in "the lifestyle of violating the interests of other people, of violating the dignity of other people." Even twenty identifiable victims "would easily have supported the sentence that the court has ordered." Accordingly, the court denied Caley's motion, and this appeal follows.

## DISCUSSION

*I. Reliance on Inaccurate Information at Sentencing*

¶12 Caley claims he is entitled to resentencing because the circuit court actually relied on Holschbach's estimate of the number of affected victims, an estimate Caley alleges to be inaccurate. A defendant is entitled to resentencing if he or she can show by clear and convincing evidence that: (1) the information at the original sentencing was inaccurate; and (2) the court actually relied on the inaccurate information at sentencing. *State v. Tiepelman*, 2006 WI 66, ¶26, 291 Wis. 2d 179, 717 N.W.2d 1. A defendant has a constitutionally protected due process right to be sentenced upon accurate information, and whether a defendant has been denied that right is a constitutional issue that we review de novo. *Id.*, ¶9.

¶13 Caley argues that because the State only discerned seventy-eight unique victims when looking at his seized equipment, Holschbach's testimony that there were safely "over a hundred victims" must be inaccurate. The record shows, however, that Caley fails to meet the first prong of the *Tiepelman* test as he has

not shown by clear and convincing evidence that Holschbach's testimony was inaccurate.

¶14 Holschbach testified to the approximate number of victims affected by Caley's actions when asked to give an estimate by the district attorney. Although the State identified seventy-eight unique victims in its review of the discovery materials, that fact did not preclude Holschbach from including other victims identified by him from different sources in his approximation. Indeed, Holschbach later testified that his estimate was based on "the entire investigation," and that it considered the large numbers of emails, calls, and in-person visits that he fielded during the investigation. Caley does not argue that Holschbach lacked personal knowledge of the investigation or its results.

¶15 Moreover, at no time did Holschbach testify to a concrete number, or explain a specific calculation or methodology that he used to estimate the number of affected victims, and he was not asked to do so. This type of exact calculation would not have fit with the purpose of the district attorney's questions at sentencing, which were intended to provide general context for Caley's crimes. The circuit court noted that it would not expect the sheriff's department—already having obtained a conviction—to use resources to calculate an exact number of victims, especially given that the nature of the evidence did not lend itself to a concrete figure. There were no counting errors or mistaken calculations that Caley proved inaccurate by clear and convincing evidence, because Holschbach's testimony was not made with that level of specificity.

¶16 Caley further argues that Holschbach's testimony was inaccurate because he was "speculating as to the number of victims" of Caley's crimes. But the district attorney asked Holschbach to make an approximation, and Holschbach

did so. This was apparent to the circuit court, who explicitly stated it understood Holschbach's statement to have been an estimate. Although Caley claims that Holschbach's estimate was speculative and without support, the record makes it evident that the number was an approximation, one based on underlying facts and circumstances Holschbach directly observed. Caley cannot show that Holschbach's general estimate was inaccurate, because Holschbach was being asked to relay his perception of part of his entire investigation, and not an absolute fact. Accordingly, the court properly concluded that Holschbach did not provide inaccurate information at sentencing regarding the estimated number of Caley's victims.

¶17 Even if we were to conclude that Holschbach's estimate at sentencing of the number of Caley's victims was in some way inaccurate, Caley further fails to prove the second prong of *Tiepelman*, as the record shows that the circuit court did not "actually rely" on Holschbach's estimate in its sentencing decision. A court relies on inaccurate information by giving "explicit attention" or "specific consideration" to the inaccurate information, so that the inaccurate information "form[s] part of the basis for the sentence." *State v. Travis*, 2013 WI 38, ¶28, 347 Wis. 2d 142, 832 N.W.2d 491 (citation omitted).

¶18 At the sentencing hearing, the circuit court did not give "explicit attention" to the number of victims in Holschbach's estimate, nor did it make any determination as to the number of victims of Caley's crimes aside from those included in the charges for which Caley had been convicted. When the court described the factors that contributed to its characterization of Caley's crimes as "aggravated," it did not rely on a specific number in doing so. Instead, the court held that the "stunning" number of victims made it clear that "this was a pattern and practice or even a lifestyle." In fact, the court specifically noted at sentencing

that although Holschbach's testimony provided context to Caley's crimes, it did not rely on the number of victims as factual because it related to uncharged matters "not actually before the court."

¶19 Contrary to Caley's claim, the hearing transcript is not permeated with references to Holschbach's estimate such that it is evident that the circuit court relied on it. Holschbach's testimony provided context regarding the numerous methods by which Holschbach received information about Caley's potential victims. It provided the general impression that there were a large number of victims, but not that Holschbach was aware of the exact number. Both parties agreed that there were at least seventy-eight victims identified in the videos and media on Caley's devices alone, which supported the court's general conclusion that there were a large number of victims outside of those identified in the charges brought against Caley.

¶20 Moreover, in addressing the arguments raised in Caley's postconviction motion, the circuit court specifically concluded it had not relied on Holschbach's testimony, clarifying that Holschbach's one-hundred-victim estimate was not testimony that had influenced its decision. Instead, the court stated its decision was driven by the "stunning" number of victims in the case, clarifying that "[a]nything over 40, in the court's view, is stunning. 41 would be stunning. 50 would be stunning. 78 would be stunning. 100 would be stunning. 200 would be stunning." In the court's opinion, any of those large numbers show a "lifestyle of violating the interests [and] dignity of other people." The court noted that even twenty identifiable victims "would easily have supported the sentence that the court has ordered." These statements clearly show the court did not rely upon Holschbach's estimate of the number of victims when sentencing

Caley. The court properly denied Caley's postconviction motion for resentencing as it did not rely upon inaccurate information.

## II. New Factor

¶21 Caley next argues that the State's postsentencing discovery proves that he did not victimize more than one hundred people, and is therefore a new factor justifying sentence modification. To obtain sentence modification based on the showing of a new factor, a defendant must demonstrate by clear and convincing evidence that a new factor exists, and that the new factor justifies sentence modification. *State v. Harbor*, 2011 WI 28, ¶¶36-38, 333 Wis. 2d 53, 797 N.W.2d 828. A new factor is "a fact or set of facts highly relevant to the imposition of [a] sentence" that was not known to the sentencing court either because it was not in existence at the time of sentencing, or because it was unknowingly overlooked by both parties. *Id.*, ¶40 (citation omitted). Whether a fact or set of facts presented by the defendant constitutes a new factor is a question of law we review de novo, but whether that new factor justifies sentence modification is a decision left to the discretion of the circuit court, which we review for an erroneous exercise of discretion. *Id.*, ¶33.

¶22 Caley has not met this burden on his new factor claim. First, for the reasons discussed above, Caley fails to provide evidence of a new factor—that there were actually fewer than one hundred victims—as he incorrectly equates the State's report analyzing one part of discovery with a final count of the victims.

¶23 Second, as previously explained, the circuit court did not rely on the precise number of Caley's victims in making its sentencing decision, and therefore, whether that number was one hundred, seventy-eight, forty or less, it could not have been highly relevant to the sentence imposed. At the

postconviction hearing, the court stated that it considered Caley's crimes as aggravated with as few as twenty victims. Furthermore, given that the exact number of Caley's victims was not highly relevant to the court on sentencing, it properly exercised its discretion in denying Caley's postconviction motion.

*III. Discovery Violation*

¶24   Finally, Caley contends that the State violated both WIS. STAT. § 971.23 and its obligations under ***Brady v. Maryland***, 373 U.S. 83 (1963), by failing to disclose the basis for Holschbach's testimony prior to the sentencing hearing. Whether a discovery violation has occurred because the State failed to disclose required information under § 971.23(1) is a question of law we review without deference to the circuit court. *See* ***State v. Rice***, 2008 WI App 10, ¶14, 307 Wis. 2d 335, 743 N.W.2d 517 (2007).

¶25   Caley's claim of a discovery violation fails for two reasons. First, although WIS. STAT. § 971.23 creates a duty to disclose witness statements, it does so only for witnesses that the State plans to call at trial. Because this appeal concerns evidence at a sentencing hearing, and not a trial, § 971.23 does not apply. The State did not violate the statute by failing to provide evidence concerning the basis for Holschbach's testimony before sentencing.

¶26   Second, the State did not violate its discovery obligations under ***Brady***. Under ***Brady***, the State must turn over to a defendant evidence that is material to either guilt or punishment. ***State v. Harris***, 2004 WI 64, ¶12, 272 Wis. 2d 80, 680 N.W.2d 737. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." ***Id.***, ¶14 (citation omitted).

11

¶27 The evidence to which Caley points—i.e., Holschbach's estimate of the number of victims—relates to matters external to the charged crimes, and so there is no reasonable probability that the evidence would have mitigated Caley's guilt or affected the finding of guilt. Although evidence contributing to an enhanced sentence might be material to the "punishment" aspect of sentencing under *Brady*, we have already determined that the circuit court did not rely on Holschbach's testimony as to the number of victims when crafting its sentence. Accordingly, there is no reasonable probability that the result of the sentencing would have been different if Caley had been provided with the basis for Holschbach's testimony before sentencing. Since the evidence was not material to either guilt or punishment, the State did not violate its *Brady* obligations.

¶28 Ultimately, Caley has not met his burden of proving that the circuit court relied on inaccurate information at sentencing, that a new factor exists warranting sentence modification, or that the State committed a discovery violation. As such, the circuit court did not err by denying Caley's motion for postconviction relief. We therefore affirm.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.