COURT OF APPEALS
DECISION
DATED AND FILED

March 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1476-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF2411

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SHAWANEE L. DAWKINS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM. Shawanee L. Dawkins appeals a judgment of conviction and an order denying postconviction relief. A jury found Dawkins guilty of second-degree reckless homicide of three-month-old Laquis Dawkins. Dawkins contends that other-acts evidence relating to the hospitalization and care of Laquis's brother, L.D., was improperly admitted at trial.[1] In addition, Dawkins argues that the trial court erroneously exercised its discretion when it allowed the State to call Laquis's mother, Crystal Dawkins, who was not on the State's witness list, in its case-in-chief. For the reasons discussed below, we reject Dawkins's claims and affirm.

## BACKGROUND

¶2　On April 10, 2017, paramedics responded to a residence in Milwaukee County to render aid to Laquis, who was in cardiac arrest. Laquis was transported to the hospital where he was pronounced deceased. The Milwaukee County Medical Examiner's Office determined that the cause of Laquis's death was malnutrition.[2]

¶3　Police separately interviewed Dawkins and Georgeann Pearson, who had come to the hospital with Laquis. Pearson told police that she is Dawkins's sister, and that they are first cousins to Laquis's mother, Crystal. Pearson, Pearson's children, Dawkins, Crystal, and Crystal's children all lived together. Pearson said that Crystal has "very obvious mental disabilities" and Pearson is

---

[1] We use initials for confidentiality purposes.

[2] At birth, Laquis weighed six pounds, eight ounces, which was in the fifty to seventy-fifth percentile for weight. At death, Laquis weighed just over eight pounds, which was under the fifth percentile for weight, and had sunken features, thin and brittle skull bones, edema of the lower extremities, tenting of the skin, and decreased adipose tissue.

Crystal's payee for her social security checks. Pearson also stated that she and Dawkins share the duties of taking care of Laquis. Likewise, Dawkins told the police that she, Pearson, and Crystal were responsible for feeding and taking care of Laquis.

¶4 The State charged both Dawkins and Pearson with one count of first-degree reckless homicide, as a party to a crime. Pearson and Dawkins were charged separately, but the two cases were tried together. A jury found both Dawkins and Pearson guilty of second-degree reckless homicide, a lesser-included offense.[3]

¶5 Prior to trial, the State moved to admit other-acts evidence regarding a 2015 hospitalization of Crystal's other child, L.D., for being underweight. The State argued that Dawkins and Pearson admitted to being the primary caretakers for L.D. and were educated on how to properly feed an infant. According to the State, this demonstrated that Dawkins and Pearson had accepted the responsibility of caring for Crystal's children and refuted any claim that Laquis's death was an accident or the result of a mistake.

¶6 Dawkins filed a written objection, claiming that the evidence only established that Dawkins had lived with Crystal and her children in the same

---

[3] The judgment of conviction reflects that Dawkins was convicted of second-degree reckless homicide as a party to a crime. The jury, however, was not instructed on party to a crime liability, and the jury's verdict did not include a finding that Dawkins was guilty as a party to a crime. Accordingly, the jury found that Dawkins committed the crime of second-degree reckless homicide as a direct actor. *See State v. Brown*, 2012 WI App 139, ¶14, 345 Wis. 2d 333, 824 N.W.2d 916. Dawkins does not request that we amend the judgment of conviction. We observe that a person who directly commits a crime is a party to the crime. *See* WIS. STAT. § 939.05(1)-(2)(a) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

household, and there was insufficient evidence to prove that Dawkins was L.D.'s caretaker.

¶7 After hearing argument, the circuit court ruled that the other-acts evidence was admissible.[4] The court found that the other-acts evidence was relevant to Dawkins's knowledge and the lack of mistake, was "near in time and place," and that "[t]he circumstances are disturbingly similar." The court indicated that any issues regarding whether Dawkins was a caretaker could be asked on cross-examination or argued during closing.

¶8 In addition, relevant to this appeal, on the third day of trial, the State indicated that Crystal, who was not on its witness list, was available to testify. The State asked the trial court for permission to amend its witness list so that it could call Crystal in its case-in-chief, rather than calling her as a rebuttal witness, out of convenience.[5] The State noted that Pearson and Dawkins had all of the statements Crystal had made through the course of the investigation.

¶9 Over the objection of Dawkins, the trial court granted the State's request to call Crystal in its case-in-chief. The court stated that the defense "has asked a lot of questions about her and opened a lot of doors about her. And, apparently, she's going to be coming in as a rebuttal witness regardless." Additionally, the court observed that Crystal was "a central character" and, thus, it was not a surprise that she might testify.

---

[4] The Honorable David Borowski presided over the other-acts motion. We refer to Judge Borowski as the circuit court. The Honorable Janet C. Protasiewicz presided over Dawkins's trial and the postconviction proceedings. We refer to Judge Protasiewicz as the trial court.

[5] We note that the State had also amended its witness list prior to trial to add additional witnesses, but did not include Crystal at that time.

¶10      After Crystal's testimony, Dawkins moved for a mistrial based on the State's failure to include Crystal on its witness list, the fact that the State failed to show good cause for its failure, and Crystal's behavior in front of the jury.[6]

¶11      The trial court rejected Dawkins's request.  The trial court admitted that it "would have been cleaner" for the State to wait to call Crystal in rebuttal.  The court, however, stated:

> based on what I've observed of [Crystal] and how challenging it was for her to get into the courtroom, the fact that she had to look backwards, couldn't look at anybody while she was testifying, it probably was in her best interest to be called out of order and not have to sit around for, potentially, a day or two.

In addition, the court stated that the State had good cause for failing to include Crystal on its witness list because Crystal would have been called in rebuttal and the defense opened the door to her testimony.

¶12      After her conviction and sentencing, Dawkins filed a postconviction motion.  The postconviction motion alleged that the circuit court erred by improperly admitting the other-acts evidence.  In addition, the postconviction motion alleged that the trial court erroneously exercised its discretion in allowing Crystal to testify in the State's case-in-chief.

¶13      After briefing, the trial court denied Dawkins' postconviction motion.  The court found that the other-acts evidence was properly admitted.  In addition, the court indicated that it stood by its ruling regarding its decision to

---

[6] Dawkins's counsel noted that Crystal had difficulty entering the courtroom, was not able to stand up to take the oath, and could not face defense counsel's table.  Additionally, a victim witness advocate sat next to Crystal during her testimony.

allow Crystal to testify. This appeal follows. Additional relevant facts are referenced below.[7]

## DISCUSSION

### I. Other-Acts Evidence

¶14 On appeal, Dawkins renews her argument that the other-acts evidence regarding the hospitalization and care of L.D. was improperly received.

¶15 "We review a circuit court's admission of other-acts evidence for an erroneous exercise of discretion." *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399. We will uphold a circuit court's evidentiary ruling if the court examined the relevant facts, applied a proper legal standard, and used a demonstrated rational process to reach a reasonable conclusion. *Id.*

¶16 Courts apply a three-step test to determine the admissibility of other-acts evidence. *State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998). Other-acts evidence may be admitted if it is: "(1) offered for an acceptable purpose under WIS. STAT. § 904.04(2); (2) relevant under WIS. STAT. § 904.01; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice, confusion, or delay under WIS. STAT. § 904.03." *State v. Gutierrez*, 2020 WI 52, ¶29, 391 Wis. 2d 799, 943 N.W.2d 870. "The party seeking to admit the other-acts evidence bears the burden of establishing that the first two prongs are met by a preponderance of the evidence." *Marinez*, 331 Wis. 2d 568, ¶19.

---

[7] We note that the facts set forth in this decision are relevant to the issues and arguments that Dawkins raises. Pearson also filed an appeal. *See State v. Pearson*, No. 2021AP1082-CR. We do not address the merits of that matter in this opinion.

Once the first two prongs are established, the burden shifts to the party opposing the admission of the other-acts evidence to show that the third prong of the test is met. ***Id.***

¶17    Dawkins makes two arguments regarding the other-acts evidence: (1) there was insufficient evidence that Dawkins was a primary caregiver of L.D., and (2) the other-acts evidence was prejudicial.

¶18    In regards to Dawkins's first argument, the State was not required to prove that Dawkins was L.D.'s primary caregiver.  Dawkins was charged with first-degree reckless homicide.  First-degree reckless homicide requires proof that the defendant "recklessly cause[d] the death of another human being under circumstances which show utter disregard for human life."  WIS. STAT. § 940.02(1).  First-degree reckless homicide does not require proof that Dawkins was a primary caregiver.  *Cf.* WIS. STAT. § 948.21 (requiring proof that a defendant was "responsible for a child's welfare" to be guilty of child neglect).

¶19    Moreover, the State only needed to prove that the other-acts evidence was offered for one acceptable purpose.  *See **Gutierrez***, 391 Wis. 2d 799, ¶29 (stating that other-acts evidence may be admitted if it is "offered for an acceptable purpose under WIS. STAT. § 904.04(2)"); ***State v. Bustamante***, 201 Wis. 2d 562, 575, 549 N.W.2d 746 (Ct. App. 1996) (concluding that because the other-acts evidence was properly offered as proof of absence of accident it was unnecessary to address whether the evidence was admissible under a different theory).  Acceptable purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Sec. 904.04(2)(a); ***Gutierrez***, 391 Wis. 2d 799, ¶30.

¶20     Here, as the circuit court found, the other-acts evidence relating to L.D. was relevant to Dawkins' knowledge and lack of mistake. The evidence relating to L.D.'s hospitalization and care showed that Dawkins accepted responsibility for caring for Crystal's children and knew of the importance of monitoring an infant's weight gain and food intake. Knowledge and absence of mistake are both identified as permissible purposes in WIS. STAT. § 904.04(2)(a).

¶21     In addition, even if we assume the State had to show that Dawkins was one of L.D.'s primary caregivers, the State met its burden under the preponderance of the evidence standard. The preponderance of the evidence standard requires a showing that it is "more likely than not" that a given act occurred. *State v. Loayza*, 2021 WI 11, ¶40, 395 Wis. 2d 521, 954 N.W.2d 358.

¶22     In its other-acts motion, the State alleged that Dawkins and Pearson accepted responsibility for caring for Crystal's children. Subsequently, at trial, social worker Mariah Johnson testified that she interviewed Dawkins and Pearson, and it was her understanding that both women provided primary care for L.D. In particular, Dawkins told Johnson that she and Pearson fed L.D. six times a day and described the different types of food fed to L.D. Both Dawkins and Pearson also filled out a feeding log for L.D.

¶23     Additionally, nurse Evelyn Hansen testified that she was assigned to work in L.D.'s home and provide instruction on feeding and caring for L.D. Hansen was also assigned to monitor L.D.'s weight gain and nutritional status. Hansen testified that she educated Crystal, Pearson, and Dawkins on feeding and how to keep a feeding log. Hansen also testified that she did not think Crystal was capable of caring for L.D. Thus, the State established by a preponderance of the evidence that Dawkins and Pearson were primary caretakers of L.D.

¶24     In regards to Dawkins's prejudice argument, we agree with the State that Dawkins forfeited this argument.  To preserve an argument for appeal, a party must make all of its arguments to the circuit court.  ***State v. Rogers***, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).  Here, Dawkins did not raise her prejudice argument in her written response to the State's other-acts motion.  Additionally, at the motion hearing, Dawkins did not mention, let alone argue, prejudice.  Accordingly, we decline to consider this argument on appeal.  *See* ***Bustamante***, 201 Wis. 2d at 571-73 (holding that the defendant was limited on appeal to the same arguments that he made at a pretrial hearing on the admissibility of other-acts evidence).[8]

¶25     Therefore, we conclude that the circuit court properly exercised its discretion when it ruled that the other-acts evidence was admissible.

## II.     Crystal's Testimony

¶26     Dawkins also renews her argument that the trial court erroneously exercised its discretion in allowing Crystal to testify in the State's case-in-chief.  Dawkins argues that the State failed to provide notice to the defense that it intended to call Crystal and did not show good cause for its failure.  In response,

---

[8] In her reply, Dawkins argues that she raised prejudice in the circuit court and cites to her motion in limine.  Dawkins's argument in her motion in limine, however, is conclusory and undeveloped.  The motion in limine simply requests that "the State be prohibited from introducing any evidence as to alleged criminal acts or other misconduct" if "such evidence is relevant to the issues in this case, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and the possibility of misleading the jury.  It, therefore, must be excluded, pursuant to [WIS. STAT. §] 904.03[.]"  The motion in limine does not develop any argument or reasoning as to why the other-acts evidence regarding L.D.'s hospitalization and care was prejudicial.  We will not address conclusory and undeveloped arguments.  *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

the State argues that the trial court properly allowed Crystal to testify, and if the court erred, any error was harmless.

¶27     Generally, the State is required to disclose to the defendant "[a] list of all witnesses and their addresses whom the district attorney intends to call at the trial." WIS. STAT. § 971.23(1)(d).[9] "The court shall exclude any witness not listed … unless good cause is shown for failure to comply." Sec. 971.23(7m)(a). If the trial court admitted evidence that should have been excluded, we decide whether the admission of that evidence was harmless. *State v. Rice*, 2008 WI App 10, ¶14, 307 Wis. 2d 335, 743 N.W.2d 517. This is a question of law that we review *de novo*. *Id.*

¶28     In the context of a discovery violation, our supreme court has stated that an error is harmless "if the beneficiary of the error proves 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained'" or, alternatively, if "it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *State v. Harris*, 2008 WI 15, ¶¶41-44, 307 Wis. 2d 555, 745 N.W.2d 397 (citations omitted). It is the State's burden to establish that an error is harmless and not prejudicial. *Id.*, ¶113.

¶29     Here, even if we assume that Crystal's testimony should have been excluded, we conclude that any error was harmless. During direct examination, Crystal testified to her age, her date of birth, that Laquis and L.D. are her children, that Pearson and Dawkins are her first cousins, and that she and Laquis lived with

---

[9] WISCONSIN STAT. § 971.23(1)(d) does not apply to rebuttal witnesses.

Pearson and Dawkins. When asked the names of everyone that fed Laquis, Crystal stopped verbally responding. The State then asked Crystal to write "yes" or "no" to three questions. Crystal confirmed in writing that she fed Laquis, Pearson fed Laquis, and Dawkins fed Laquis. When asked if Pearson and Dawkins helped her with Laquis, Crystal wrote "I do not know."

¶30 On cross-examination, Crystal nodded her head "yes" or "no" in response to questions. Crystal confirmed that she liked shopping for her children, she does not like to cook, she takes care of her children, they slept in the same room as her, she likes to travel, she had not traveled to Racine, and she likes babysitting other children.

¶31 As the State asserts, Crystal's testimony was not damaging to the defense. The majority of Crystal's testimony was innocuous. Additionally, when asked if Pearson and Dawkins helped her with Laquis, Crystal simply wrote "I do not know."

¶32 Moreover, while Crystal confirmed in writing that Dawkins and Pearson fed Laquis, this information was merely cumulative to other testimony presented at trial. As noted above, Johnson testified that Dawkins said that she and Pearson fed L.D. six times a day. The jury also heard that Dawkins told the police that she, Pearson, and Crystal were responsible for feeding and taking care of Laquis.

¶33 Finally, we note that the State indicated on the record that it had turned over all the pretrial statements made by Crystal to the defense prior to trial. Dawkins does not allege that she failed to receive any of Crystal's pretrial statements or that any of the testimony elicited from Crystal during trial was a surprise.

¶34 Therefore, for the reasons above, we conclude that Crystal's testimony does not undermine our confidence in the outcome of the trial; it is clear beyond a reasonable doubt that a rational jury would have found Dawkins guilty absent any error. *Harris*, 307 Wis. 2d 555, ¶¶42-43.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.