STATE of Wisconsin, Plaintiff-Respondent,

v.

Dennis E. SCOTT, Defendant-Appellant.†

Court of Appeals

*No. 98–3105–CR. Submitted on briefs January 4, 2000.—Decided February 29, 2000.*

2000 WI App 51

(Also reported in 608 N.W.2d 753.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph E. Redding* of *Glojek Limited*, of West Allis, Wisconsin.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Lara M. Herman*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Dennis E. Scott appeals from the judgment of conviction for burglary, party to a crime, and theft, party to a crime, following a jury trial, and from the order denying his motion for postconviction relief. Challenging only the burglary conviction,[1] he argues that the trial court erred by deferring, and later denying, his motion to dismiss following the State's presentation of its case-in-chief. He also argues that the trial court erred in allowing the State to impeach his defense witness by eliciting evidence of the witness's sentences and parole eligibility date. We affirm.

¶ 2. Based primarily on fingerprint evidence, Scott was prosecuted for burglary and theft stemming from a single incident: the entry to the building occupied by Kubin-Nicholson Corporation, a printing company, and the taking of a lap-top computer from

---

[1] As will be apparent from the quoted portions of the record, Scott, moving to dismiss at trial, drew no distinction between the two charges and articulated no basis for his motion. At sentencing, defense counsel commented that he believed that at the end of the State's case-in-chief, the evidence did not establish a "sufficient tie-in of Mr. Scott to the situation." On appeal, Scott's arguments, with the exception of a brief reference to the theft charge in his reply brief, relate only to whether the State's evidence, introduced in its case-in-chief, was sufficient to establish that he intentionally entered a building without consent, and that he did so with the intent to steal. *See* WIS JI—CRIMINAL 1421 ("Burglary . . . is committed by one who intentionally enters a building without the consent of the person in lawful possession and with intent to steal.").

one of the company's inner offices.[2] The State's trial evidence was simple and undisputed. Kubin-Nicholson served business clients and had no retail store; its building was not generally open to the public. On the night of July 8–9, 1996, a lap-top computer Kubin-Nicholson had recently purchased was stolen from one of the Kubin-Nicholson offices. Scott's fingerprint was found on the bottom of the computer "desk dock" from which the lap-top was taken. Scott had never been employed by Kubin-Nicholson, had not been assigned to clean the Kubin-Nicholson offices under any subcontract, and had not been given permission to enter the Kubin-Nicholson building or the office from which the lap-top was stolen.

## I.  MOTION TO DISMISS / SUFFICIENCY OF FINGERPRINT EVIDENCE

¶ 3.  At the close of the State's case-in-chief, defense counsel and the trial court had the following exchange:

> [DEFENSE COUNSEL]:   Your Honor, I'd like to make a motion to dismiss. I don't know if you want . . . me to do it now or tomorrow morning.
> THE COURT:   We'll do it—at this point, the general inclination is we'll address it later after you proceed[ ] with your case, if you intend to. *I can separate when the State has ended its case and any*

---

[2] Both offenses were charged as party to a crime because, as the prosecutor explained in his opening statement, the State did not have:

> any evidence to show if anybody was with [Scott] . . . . So when the State has a situation where it does not know if the person who left the fingerprint had help or not or was with others, then the party to a crime is charged because that includes either being the direct actor or somebody who was involved.

*evidence that's introduced subsequently.* So I gener-
ally do wait until later to rule on a motion to dismiss
at the close of the State's case.

    [DEFENSE COUNSEL]:   That's fine.

(Emphasis added.) The defense then called one wit-
ness, Vincent Lewis, whose testimony is involved in the
second issue in this appeal. Following closing argu-
ments and jury instructions, the court then returned to
the defense motion to dismiss. Defense counsel con-
tended:

> I believe that if you look at the evidence the way it
> has to be looked at for a motion to dismiss, the State
> clearly established that some sort of a crime
> occurred here; clearly established that someone
> stole a laptop computer.
>
>     The question is is there any reasonable way or
> sufficient inference to tie in Mr. Dennis Scott with
> that theft? Essentially at the close of the State's
> case the evidence tying Mr. Scott into it was a fin-
> gerprint found in close proximity to where the item
> was stolen. And I would say[,] being fair to the
> State[,] found in a position that if the State's posi-
> tion is believed . . . would be a position where . . . if
> Mr. Scott was involved his fingerprint would end
> up, but I don't think the mere extent of a fingerprint
> at the scene of a crime . . . sufficiently ties Mr. Scott
> into being at that scene at that particular time that
> the crime occurred nor do I think that it was estab-
> lished that the fingerprint was left at that location
> . . . at that time. . . .
>
>     And I'd ask the Court to consider that and to
> dismiss based upon the very tenuous fingerprint
> link to the time and place of the crime.

¶ 4.   Denying the motion to dismiss, the trial court explicitly limited its consideration to the evidence "[a]t the close of the State's case" and ruled:

> [T]he question comes down to whether or not the fingerprint on its particular location was sufficient or could be sufficient from which the jury could conclude the defendant was guilty beyond a reasonable doubt. I think taken in the totality of the circumstances, particularly the location of that print, that being on the bottom of the desk dock as it was commonly referred to, that that is a location in which the laptop was pushed into to operate as a desktop computer. That system was approximately two years old. It was located in a private office in a private corporation. The public did not have access to it.
>
> The area was generally cleaned each night although the computer area was dusted merely with a dustmop or feather-type object.
>
> It is the unique area in which it was located . . . when put together with the fact the clock was knocked away, papers were out of the[ir] normal place, the computer had been moved, that under all of those circumstances . . . the jury could conclude beyond a reasonable doubt that the defendant entered the building . . . with an intent to steal.

¶ 5.   Scott argues that the trial court erred in denying his motion to dismiss based on the State's evidence.[3] The State first responds that Scott, "by failing to object to the trial court's decision to reserve ruling on his motion to dismiss," and then by presenting evidence, waived his challenge to the denial of his motion

---

[3] Scott acknowledges the probative value of the *defense* evidence and concedes that "if *all* evidence is reviewed there is sufficient evidence to support the burglary conviction."

to dismiss, under *State v. Kelley*, 107 Wis. 2d 540, 319 N.W.2d 869 (1982). Scott disagrees, maintaining, first, that regardless of his agreement to the trial court's deferral of its decision, his motion to dismiss preserved his challenge and, second, that if, under *Kelley*, he waived his challenge by failing to object to the court's deferral, such failure was plain error. Thus, he argues, this court should address the issue, under the discretionary authority as articulated in *State v. Neuser*, 191 Wis. 2d 131, 140, 528 N.W.2d 49 (Ct. App. 1995) (court of appeals "may overlook waiver where the error is so plain or fundamental as to affect the substantial rights of the defendant").

¶ 6.  In *Kelley*, the supreme court reiterated that "where a defendant moves for a dismissal . . . at the close of the prosecution's case and when the motion is denied, '. . . the introduction of evidence by the defendant, if the *entire* evidence is sufficient to sustain a conviction, waives the motion to [dismiss].' " *Kelley*, 107 Wis. 2d at 544 (alteration in original) (quoted source omitted). Thus, a defendant has a dilemma: if the motion to dismiss is denied, the defendant "has the option of either not presenting any evidence on his behalf and preserving the ruling for appeal or abandoning his motion and introducing his defense." *Id.* at 545. The parties agree, however, that the instant case is distinguishable from *Kelley* because the trial court, rather than denying Scott's motion at the close of the State's case, deferred its decision until the end of the trial.

¶ 7.  As Scott effectively argues, this distinction makes a difference. After all, as *Kelley* explains, a defendant's dilemma, arising after the denial of a motion to dismiss, is difficult. *See id.* But the dilemma also is unavoidable, and fair. *See id.* Under *Kelley*, the

defendant will have to decide whether to pursue the challenge to the sufficiency of the State's evidence on appeal, or to relinquish that issue in order to offer evidence. But under *Kelley*, the defendant will do so *with knowledge of the trial court's decision. See id.* The dilemma, however, is compounded, unnecessarily and unfairly, if a defendant must make that choice *without knowledge of the trial court's decision. See generally* U. S. CONST. Amend. VI; WIS. CONST. Art. I, § 7; *State v. Dodson*, 219 Wis. 2d 65, 71–72, 580 N.W.2d 181 (1998) (defendant has constitutional right to present a defense); *State v. Shegrud*, 131 Wis. 2d 133, 137, 389 N.W.2d 7 (1986) ("The due process clause of the U.S. Constitution requires a defendant's waiver of constitutional rights be knowing and voluntary.").

¶ 8.   If, as the State suggests, the *Kelley* waiver rule should apply under the circumstances of the instant case, a defendant would not be able to make a fully informed choice about whether to offer evidence. After all, not knowing the trial court's ruling on the motion to dismiss, the defendant would have to choose between foregoing the opportunity to present evidence in order to preserve the motion, and presenting evidence that might strengthen the State's case. Moreover, as Scott points out, a defendant's dilemma becomes all the more difficult in multiple count cases where, as here, the defense strategy may vary considerably depending on which charges, if any, the trial court dismisses.[4]

---

[4] As argued in Scott's brief to this court:

> This is particularly true [in] Scott's case. He was charged with theft and burglary. The evidence for burglary was but a single fingerprint found on a movable dock station. If the motion to dismiss would have been decided before Scott began his defense, he would have known that both the burglary charge and the theft

¶ 9. Thus, unquestionably, when the defense moves to dismiss *at the close of the State's case,* the better practice is for trial courts to decide the motion *at the close of the State's case.* Further, unquestionably, if the defense needs to know the court's ruling in order to determine whether to present evidence, defense counsel should say so and, to preserve its potential appellate challenge, should object to any deferral of the decision. Clearly, such practices make sense. They flow logically from the concerns expressed in *Kelley* and are consistent with fundamental fairness to both prosecution and defense. *See Vollmer v. Luety,* 156 Wis. 2d 1, 10–11, 456 N.W.2d 797 (1990) (discussing the importance of providing specific objections at trial both to allow the trial court the opportunity to evaluate issues when possible errors may be corrected, and to preserve issues for appeal).

¶ 10. Accordingly, here, where the trial court deferred its decision on Scott's motion to dismiss, we agree with Scott's contention that we "should only examine the evidence presented by the State when determining if sufficient evidence exists to uphold the conviction." After all, that is the only evidence the trial court could have considered in determining whether the State's case survived Scott's motion to dismiss. In

charge were pending. Perhaps Scott, believing that this single fingerprint could not prove his intent as he entered the building, felt that the burglary charge would be dismissed, and that he should offer a defense for the theft. However, if Scott would [have] known that the burglary charge was not dismissed, perhaps he would have taken the advice of his counsel and not have called Lewis. However, at the time he made his decision to call Lewis, he did not know whether he had the issue regarding his motion to dismiss to preserve for appeal.

this case, however, our approach is eased by the manner in which the trial court ultimately considered Scott's motion to dismiss.

¶ 11. The trial court, both at the time it deferred its decision and at the end of the trial when it denied Scott's motion, clarified that it was only considering the State's evidence. Thus, in this case, we may simply consider whether, regardless of *when* it decided the motion, the trial court correctly decided the motion because, as the State argues, "the net effect" was the same, and because "Scott has not demonstrated actual prejudice from the trial court's deferral in denying his motion to dismiss."

■

¶ 12. Our supreme court has declared the standard of review:

> The test of the sufficiency of the evidence on a motion to dismiss in the trial court is the same as that on appeal. It is whether, considering the state's evidence in the most favorable light, the evidence adduced, believed and rationally considered, is sufficient to prove the defendant's guilt beyond a reasonable doubt.

*State v. Duda*, 60 Wis. 2d 431, 439, 210 N.W.2d 763 (1973); *see also State v. Dahlk*, 111 Wis. 2d 287, 304–05, 330 N.W.2d 611 (Ct. App. 1983). Even if we were to believe that a jury, presented with the State's evidence, should not have found a defendant guilty, we will not reverse a trial court's denial of a motion to dismiss as long as the jury, viewing the evidence in the light most favorable to the State's theory, reasonably could have found the defendant guilty beyond a reasonable doubt. *See Bere v. State*, 76 Wis. 2d 514, 526, 251 N.W.2d 814 (1977).

¶ 13.   Scott argues that the State's evidence failed to preempt two alternative theories, each of which would be consistent with his innocence of burglary: (1) his fingerprint "was on the dock station before it entered the [Kubin-Nicholson] building"; and (2) he "entered the building innocently enough, but once there, saw the computer, and decided to take it." He points out that "[n]o evidence was presented as to whether [he] worked at the company where the dock station was purchased" and, therefore, because "the fingerprint expert testified that he could not determine how long ago a fingerprint was created," the evidence did not preclude the possibility that his fingerprint was deposited during such employment. Alternatively, he also points out that no evidence directly established that he entered the building with the requisite intent to steal. We reject Scott's argument for two reasons.

¶ 14.   First, Scott builds his argument on a weak legal foundation. He contends that this court, in reviewing the trial court's denial of his motion to dismiss, must consider the evidence much as a jury would—i.e., by examining whether the circumstantial evidence is "sufficiently strong to exclude every reasonable theory of innocence." *See State v. Shaw*, 58 Wis. 2d 25, 29, 205 N.W.2d 132 (1973). But that is not our standard. As the supreme court clarified:

> In reviewing the sufficiency of circumstantial evidence to support a conviction, an appellate court need not concern itself in any way with evidence which might support other theories of the crime. An appellate court need only decide whether the theory of guilt accepted by the trier of fact is supported by sufficient evidence to sustain the verdict rendered.

*State v. Poellinger*, 153 Wis. 2d 493, 507–08, 451 N.W.2d 752 (1990).

¶ 15.   Second, Scott bases his argument not on reason, but on specious speculation. Is it possible that Scott worked for the company that sold the computer dock? Is it possible that during the course of such employment he touched this particular computer dock, and that his fingerprint survived through delivery and use? Is it possible that Scott, for some unknown reason, harboring no intention to steal, walked into the Kubin-Nicholson building despite its lack of any retail or other public function? And is it possible that, after the Kubin-Nicholson employees departed, Scott happened upon the computer and only *then* decided to take it? Granted, these are all possibilities; none, however, is reasonable. *See Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 791, 541 N.W.2d 203 (Ct. App. 1995) (trier of fact must not base findings on conjecture or speculation).

■

¶ 16.   Here, Scott maintains that the State's evidence consisted of nothing more than his fingerprint and, he contends, that is not enough. We need not decide, however, whether fingerprint evidence, standing alone, would be sufficient to survive a motion to dismiss because, as the trial court pointed out, in this case the State's evidence established much more. It demonstrated that Scott had no business in the building, either as an employee of Kubin-Nicholson or of a subcontractor hired to clean its offices. It demonstrated that the Kubin-Nicholson offices were private, permitting no casual entry by Scott or anyone else. It demonstrated that the burglary and theft were committed outside regular business hours, logically implying that any unauthorized person entering the

building at that time was doing so with the intent to steal. Thus, the State's evidence directly led to the reasonable inference that Scott committed the burglary. Based solely on the State's evidence, the trial court correctly denied Scott's motion to dismiss.

## II. IMPEACHMENT OF DEFENSE WITNESS / SENTENCES AND PAROLE ELIGIBILITY

¶ 17.   The defense called one witness—Vincent Lewis, who knew Scott because Scott had dated the daughter of the woman with whom Lewis had had a relationship. Lewis testified that he had committed burglaries at the Kubin-Nicholson building several times before. He said that on July 8, 1996, he happened to meet Scott at a gas station, asked him for a ride back to work where he had to pick up something, asked Scott for help moving a desk in order to take the lap-top computer, and calmly carried away the computer while giving Scott the impression that he worked at Kubin-Nicholson and was taking the computer from his own office to work at home. Lewis testified that he later sold the lap-top to a stranger for $800.

¶ 18.   Lewis maintained that Scott simply had helped him without realizing that they were "ripping off the lap-top computer." Lewis explained that he left no fingerprints because, as he testified, "what I touched, I took." Declaring that he alone had removed the computer from the dock, however, Lewis could not explain how Scott's fingerprint got on the desk dock.

¶ 19.   Lewis testified that he had come forward to admit the burglary and theft despite knowing that he could be prosecuted for the crimes. He explained: "I don't feel that [Scott] should be punished for something that I did, for something that he did not know nothing

about." He claimed his testimony was motivated "[m]ostly [by] the conscience."

¶ 20. The State suggested that something other than conscience motivated Lewis. Not only did Lewis know Scott through the women they had been dating, but approximately seven months before Scott's trial, Lewis had been sentenced for three crimes—to consecutive prison terms of life, with a parole eligibility date in 2057, forty years, and ten years. The State sought to impeach Lewis not only with the fact of his numerous prior convictions,[5] but also with his sentences and parole eligibility date. As the trial court observed, Lewis's sentences and parole eligibility date were relevant to his "motive for lying" because "he has nothing to lose . . . if he were to admit this burglary and theft[;] he's not getting out of the prison system anyway, so he would suffer no loss." Objecting, the defense conceded that the information "may be . . . relevant" but argued that "it would be unduly prejudicial." The trial court overruled the objection, explaining:

> [T]he information is relevant. Its probative value as to the credibility of this particular witness is substantial.

---

[5] Lewis admitted to between six and eight convictions in Florida, Illinois, and Wisconsin. As Scott points out, the trial court failed to hold a hearing prior to Lewis testifying to determine the exact number of convictions, as required by WIS. STAT. § 906.09(3) (1997–98). *See Gyrion v. Bauer*, 132 Wis. 2d 434, 438, 393 N.W.2d 107 (Ct. App. 1986) ("[W]hile a witness may be cross-examined regarding prior convictions, he may not be so cross-examined until there has been a hearing on the admissibility of the prior convictions."). Scott did not object, however, and, on appeal, he offers no argument that the number of convictions Lewis admitted was inaccurate or that, somehow, any prejudice resulted from the failure to hold a hearing.

> . . . [I]t's a reasonable conclusion that the jury may draw from a life sentence that this witness has nothing to lose and, therefore, can make any statement that he wishes and claim to be the person who committed any crime because there is no consequence for him. And I think that's relevant. I don't believe that any prejudice outweighs that probative value under these particular circumstances.

We agree.

¶ 21.   A trial court has discretion to determine the proper scope of cross-examination to impeach a witness. *See Rogers v. State*, 93 Wis. 2d 682, 689, 287 N.W.2d 774 (1980). Moreover, as the supreme court has emphasized: "The bias or prejudice of a witness is not a collateral issue and extrinsic evidence may be used to prove that a witness has a motive to testify falsely. The extent of the inquiry with respect to bias is a matter within the discretion of the trial court." *State v. Williamson*, 84 Wis. 2d 370, 383, 267 N.W.2d 337 (1978) (citation omitted). We will not reverse a trial court's discretionary decision to permit cross-examination to expose a witness's possible motive to lie unless the court's decision "represents a prejudicial [erroneous exercise] of discretion." *State v. Lindh*, 161 Wis. 2d 324, 348–49, 468 N.W.2d 168 (1991), *reversed sub nom. Lindh v. Murphy*, 521 U.S. 320 (1997).

¶ 22.   On appeal, Scott argues: (1) evidence of Lewis's sentences and parole eligibility date was not "other acts" evidence under WIS. STAT. § 904.04(2) (1997–98),[6] and, therefore, was inadmissible "character" evidence; (2) the evidence was inadmissible under WIS. STAT. § 906.09, because it went beyond the fact and

---

[6] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

number of convictions; (3) the evidence was not relevant because it did not help to prove any element of theft or burglary; and (4) even if relevant, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

¶ 23. The State specifically disclaims any contention that the evidence was admissible under WIS. STAT. § 904.04(2) or WIS STAT. § 906.09. Further, as the State points out, Scott did not object on the basis of relevancy; as noted, he conceded that the evidence "may be . . . relevant." *See State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (equitable doctrine of judicial estoppel "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position"). Thus, we focus on whether, as Scott has consistently maintained, the probative value was substantially outweighed by the danger of unfair prejudice.

¶ 24. WISCONSIN STAT. § 904.03 provides, in part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Scott argues that evidence of Lewis's lengthy sentences and parole eligibility was unfairly prejudicial because it destroyed Lewis's credibility. Scott contends that the evidence "create[d] an inference that because Lewis was sentenced to a long period in [prison], he [was] a bad person, who should not . . . be believed." He maintains that "[o]nce the State elicited the testimony that Lewis was a life prisoner, the jury had to have viewed Lewis in a much different light."

¶ 25. Essentially, the State agrees—that is, the State also surmises that the jury would indeed "view[ ] Lewis in a much different light" once it understood his relationship with Scott in combination with his no-risk

145

status. But the State insists that this was fair. As the State argues:

> Evidence of Lewis' lengthy incarceration was highly probative because it provided an explanation for why Lewis could take the blame for the burglary and theft without fear of any real, meaningful repercussions. This evidence was used by the prosecution for the very limited purpose of attacking the credibility of Lewis' specific testimony admitting commission of the crimes charged against Scott because he risked nothing by his admission.

The State is correct.

¶ 26.   Lewis claimed to be motivated by "conscience," and declared his willingness to confess to these crimes despite knowing that, as a result of his testimony, he could be prosecuted for them. Based on Lewis's account of his motives, the jury had a significantly incomplete basis on which to evaluate his credibility. After all, ordinarily, a witness's confession exculpating a defendant would be contrary to the witness's penal interest, *see State v. Lenarchick*, 74 Wis. 2d 425, 429 n.1, 247 N.W.2d 80 (1976), and, therefore, could enhance the witness's credibility. But here, *where no practical, penal consequence could accrue*, a jury would be misled were it not informed of the witness's no-risk status.

¶ 27.   Scott insists, nevertheless, that *State v. Trudeau*, 157 Wis. 2d 51, 458 N.W.2d 383 (Ct. App. 1990), establishes a "prohibition of further inquiry into the nature of the crime [that] also includes the sentence received." He misreads *Trudeau*. There, we considered only whether, under WIS. STAT. § 906.09(1),[7] a defendant could be impeached with the fact and num-

---

[7] WISCONSIN STAT. § 906.09 provides:

ber of "prior criminal acts to which he had pled guilty, but [for which he] had not yet been sentenced." *See Trudeau*, 157 Wis. 2d at 52. We held that such convictions were admissible for impeachment. *Id.* Indeed, we observed that § 906.09(1) "is focused on the prior act, not the criminal sentence resulting from it" and, further, "the criminal act and not the subsequent punishment underlies the theory that prior convictions affect credibility." *Id.* at 54.

¶ 28. Thus, while clearly distinguishable, *Trudeau*, if anything, supports the State's position by segmenting a conviction and a sentence for purposes of analysis under WIS. STAT. § 906.09(1). Similarly, we note that *State v. Rutchik*, 116 Wis. 2d 61, 341 N.W.2d 639 (1984), a decision on which Scott also heavily relies, reiterates that, once a witness is asked whether he or she "has ever been convicted of a crime and if so how many times," § 906.09 permits "[n]o further inquiry into *the nature and circumstances of the crimes*." *Rutchik*, 116 Wis. 2d at 76 (emphasis added).

---

**Impeachment by evidence of conviction of crime or adjudication of delinquency. (1)** GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or adjudicated delinquent is admissible. The party cross-examining the witness is not concluded by the witness's answer.

**(2)** EXCLUSION. Evidence of a conviction of a crime or an adjudication of delinquency may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

**(3)** ADMISSIBILITY OF CONVICTION OR ADJUDICATION. No question inquiring with respect to a conviction of a crime or an adjudication of delinquency, nor introduction of evidence with respect thereto, shall be permitted until the judge determines pursuant to s. 901.04 whether the evidence should be excluded.

**(5)** [sic] PENDENCY OF APPEAL. The pendency of an appeal therefrom does not render evidence of a conviction or a delinquency adjudication inadmissible. Evidence of the pendency of an appeal is admissible.

Here, the State did not inquire into "the nature and circumstances" of Lewis's crimes but, instead, exposed his sentences and parole eligibility in order to directly address his possible motive to confess, without risk.

¶ 29.   A trial, at best, is a search for the truth. *See State v. Reid*, 166 Wis. 2d 139, 146, 479 N.W.2d 572 (Ct. App. 1991) (search for truth is highest priority at trial). In this case, the trial court's discretionary determination reasonably expanded the jury's opportunity to evaluate the credibility of a critical witness, thus enhancing the jury's chance to discover the truth.

*By the Court.*—Judgment and order affirmed.