COURT OF APPEALS
DECISION
DATED AND FILED

September 22, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2147-CR**

Cir. Ct. No. **2019CT90**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KODY R. KOHN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Affirmed*.

¶1 GROGAN, J.[1] Kody R. Kohn appeals from a judgment of conviction after a jury found him guilty of operating a motor vehicle while

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

intoxicated (OWI) and operating with a prohibited alcohol concentration (PAC), both as second offenses, and of bail jumping. On appeal, Kohn asserts the trial court erred when it: (1) denied his pre-trial motion to suppress evidence arising from the blood draw; (2) excluded five exhibits Kohn intended to introduce into evidence during cross-examination of the State's blood analyst at trial thereby violating his right to due process; and (3) denied his motions to dismiss and for judgment notwithstanding the verdict as to the bail-jumping charge. Because the trial court did not err in any respect, this court affirms.

## I. BACKGROUND

¶2 A City of Port Washington police officer initiated a traffic stop involving Kohn in a separate matter on November 25, 2018. Kohn was arrested and received a citation for OWI first offense, and he was convicted on February 15, 2019. He was also charged with multiple misdemeanors related to that traffic stop in Ozaukee County case No. 2018CM499. Kohn was released on November 26, 2018, pursuant to certain bail/bond conditions, which included a condition that he not commit any additional crimes. Kohn signed the bail/bond form.

¶3 Four days after being released with those conditions, on November 30, 2018, at 1:59 a.m., City of Port Washington Police Officer Ryan Hurda initiated a traffic stop involving Kohn after noticing damage to Kohn's vehicle and observing Kohn drifting within the traffic lane while traveling 34 mph in a 25 mph zone. Officer Hurda noticed a strong scent of intoxicants when he approached Kohn's vehicle, and he observed that Kohn's eyes were glassy and "watery." Officer Hurda administered multiple field sobriety tests. After determining Kohn was intoxicated, he placed Kohn under arrest.

2

¶4 Officer Hurda read Kohn the Informing the Accused Form and administered ***Miranda***[2] warnings. The Informing the Accused Form, which mirrors WIS. STAT. § 343.305(4), states, in relevant part:

> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. *If you refuse to take any test that this agency requests*, your operating privilege will be revoked and *you will be subject to other penalties*. The test results or the fact that you refused testing can be used against you in court.

(Emphasis added.) Kohn consented to the blood draw, which was performed at 3:17 a.m. The sample was sent to the Wisconsin State Laboratory of Hygiene, where a blood analyst performed an analysis of Kohn's blood sample on December 10, 2018. The test results revealed a blood alcohol concentration (BAC) of .086. On February 28, 2019, the State filed a complaint in Ozaukee County, case No. 2019CT90, charging Kohn with OWI and PAC, both as second offenses. The State later added a misdemeanor bail-jumping charge based on the bail/bond condition in Ozaukee County case No. 2018CM499 that Kohn not commit any additional crime after his release on November 26, 2018.

¶5 Kohn filed a pre-trial motion to suppress evidence stemming from the blood draw, arguing his consent was involuntary due to misleading and coercive language in the Informing the Accused Form. He argued his consent was involuntary because the language "[i]f you refuse to take any test that this agency requests … you will be subjected to other penalties" was coercive and an incorrect

---

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

3

statement of law.[3] The trial court denied the motion in a written order signed on February 6, 2020.

¶6     At trial, Kohn sought to introduce five physical exhibits related to the BAC test results and testing process he intended to use while cross-examining the State's blood analyst. The State objected on the grounds that Kohn had not disclosed the exhibits prior to trial—including prior to jury selection when the trial court addressed the parties' motions in limine—despite the State's WIS. STAT. § 971.23(2m) discovery request. In response, Kohn asserted he was not obligated to produce the exhibits in response to the State's discovery request because: (1) the documents were not related to a defense expert's testimony or a defense expert's test results; (2) the documents were related to the State's blood test, which he argued the State already had access to; and (3) doing so would "telepath" the defense strategy to the State. The trial court excluded the five exhibits based on Kohn's having failed to comply with § 971.23(2m)(c), but confirmed Kohn would otherwise have an opportunity for "[c]omplete cross-examination" of the analyst.

¶7     The State's blood analyst testified at length about blood sample testing procedures, the process for calibrating the testing machine, the blood test analysis results, and the cleaning and maintenance of the machines used to perform the test. He also provided expert testimony as to retrograde extrapolation, which is a calculation that takes into account known information such as the BAC in the blood sample, the time the blood sample was taken compared to the time of

---

[3] Kohn also argued the statement "the fact that you refused testing can be used against you in court" was false. Kohn has not pursued that argument on appeal, and therefore this court need not address it. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

the traffic stop, and the time the individual last consumed an alcoholic beverage, to determine an individual's possible BAC at a prior point in time. Based on Kohn's .086 BAC test result, the time of the blood draw (3:17 a.m.), the time of the traffic stop (1:59 a.m.), and the time Kohn stopped drinking (1:00 a.m.), the analyst testified that based on his retrograde extrapolation calculation, Kohn's BAC at the time of the traffic stop may have ranged between .098 and .111.

¶8      During cross-examination, Kohn elicited testimony from the analyst regarding the calibration process used on the machine prior to having tested Kohn's blood samples. The analyst explained that to calibrate the machine, he ran tests of five samples with known quantities of the chemical ethanol. This allowed the analyst to determine whether the machine was accurately measuring the amount of ethanol present. The analyst then ran two "blanks"—samples that did not contain ethanol—to confirm whether there was any "carryover contamination" from the prior ethanol-containing samples. The first "blank" returned a result of .006, which the analyst testified would be reported as not detected.[4] He further testified he did not believe Kohn's sample was affected by the carryover amount because first, the amount of the carryover was not reportable, and second, the carryover contamination immediately followed a sample with a target value of 0.631, which is a result the analyst testified would not be found in a living human and therefore would not be seen in an actual blood sample. A second "blank" returned a result of 0.00.

¶9      The analyst explained that he ran two tests of Kohn's blood sample, which were the seventy-third and seventy-fourth tests run in a batch of ninety-six

---

[4] Test results of 0.01 and higher are considered reportable amounts.

test tubes, and he also ran a control test during that process. Fourteen samples were run between the control and Kohn's sample. The results for those samples included 0.227, 0.228, 0.244, and 0.243. The analyst testified that relative to the carryover contamination detected in the blank during the calibration process, he did not believe carryover contamination impacted Kohn's test result because the carryover contamination in the blank was an unreportable amount and had followed a sample significantly higher than the samples preceding Kohn's sample.

¶10 Kohn also elicited testimony from the analyst regarding the cleaning process for the diluters used to dilute Kohn's blood sample as part of the testing process. The analyst testified that the diluter used for Kohn's blood sample was last cleaned ten days prior to testing Kohn's sample and that the length of time that had passed since the diluter was last cleaned would not have invalidated Kohn's test results.

¶11 The jury found Kohn guilty on all three counts, and Kohn then moved to dismiss and for judgment notwithstanding the verdict. Kohn argued dismissal or judgment notwithstanding the verdict was appropriate as to the bail-jumping charge because he did not violate the terms of his bail/bond from the 2018CM499 case by committing a new crime because as of November 30, 2018, he did not have any prior OWI or PAC convictions and therefore the November 30 incident was, at the time the incident occurred, a traffic violation rather than a crime. The trial court denied both motions and entered a judgment of conviction on all counts.[5] As to the OWI conviction, the trial court sentenced Kohn to fifteen

---

[5] Although the jury found Kohn guilty of both OWI and PAC, the court imposed sentence only as to the OWI second offense pursuant to WIS. STAT. § 346.63(1)(c).

days in jail with Huber privileges (with credit for time served according to jail records), a $350 fine, an eighteen-month revocation of driving privileges, an ignition interlock device for eighteen months, and an alcohol assessment. On the bail-jumping conviction, the trial court fined Kohn $500 plus costs. The trial court also required that Kohn take a DNA test and pay costs for each count that resulted in conviction. The trial court granted Kohn's motion to stay the sentence pending appeal.

¶12 Kohn filed a notice of intent to pursue postconviction or postdisposition relief on September 25, 2020, and he filed a notice of appeal on December 18, 2020, seeking relief from the judgment of conviction entered on September 28, 2020.

## II. DISCUSSION

¶13 Kohn raises multiple claims on appeal: (1) the trial court should have granted his suppression motion; (2) the trial court should not have excluded his proffered trial exhibits; (3) he did not violate the terms of his bail/bond conditions when he received citations for OWI and PAC on November 30, 2018; and (4) the trial court therefore erred in denying his motions to dismiss and for judgment notwithstanding the verdict.[6] For the reasons that follow, this court affirms.

---

[6] On appeal, Kohn's argument regarding the trial court's denial of his motion to dismiss and his motion for judgment notwithstanding the verdict is limited to the bail-jumping charge.

## A. The trial court did not err in denying Kohn's motion to suppress because Kohn voluntarily consented to the blood draw.

¶14 Kohn argues the trial court erred in denying his motion to suppress evidence stemming from the blood draw. In support of his motion, Kohn asserts his consent was involuntary because the Informing the Accused Form read to him upon his arrest was a coercive and false statement of law. Review of a trial court's order granting or denying a suppression motion presents a question of constitutional fact. *State v. Dearborn*, 2010 WI 84, ¶13, 327 Wis. 2d 252, 786 N.W.2d 97. We "will uphold the court's factual findings unless they are clearly erroneous," but we apply constitutional principles to those facts independently. *State v. Coffee*, 2019 WI App 25, ¶6, 387 Wis. 2d 673, 929 N.W.2d 245.

¶15 Consent is a well-established exception to the warrant requirement found in the Fourth Amendment of the United States Constitution and article I, section 11 of the Wisconsin Constitution. *State v. Artic*, 2010 WI 83, ¶¶28-29, 327 Wis. 2d 392, 786 N.W.2d 430 (citing U.S. CONST. amend. IV; WIS. CONST. art. I, § 11). "The question of whether consent was given in fact is a question of historical fact[,]" and the reviewing court upholds those findings so long as they are "not contrary to the great weight and clear preponderance of the evidence." *Artic*, 327 Wis. 2d 392, ¶30. It is the State's burden to establish consent was given freely and voluntarily, and it must do so by clear and convincing evidence. *Id.*, ¶32. Factors to be considered in determining whether consent was given voluntarily include: (1) whether police officers used deception and misrepresentation; (2) whether officers used intimidation or deprivation; (3) whether conditions surrounding the request were non-threatening and cooperative; (4) how the defendant responded to the request; (5) the defendant's characteristics, such as age, intelligence, education, physical and emotional condition, and prior

police experience; and (6) whether the defendant was informed of a right to refuse consent. *Id.*, ¶33.

¶16     Wisconsin's implied consent law provides that anyone who "drives or operates a motor vehicle upon the public highways of this state … is deemed to have given consent to one or more tests of his or her breath, blood or urine" upon request from a law enforcement officer to determine whether drugs or alcohol are present in the person's blood or breath. WIS. STAT. § 343.305(2). A law enforcement officer may request such samples upon arrest for a violation of WIS. STAT. § 346.63(1). Sec. 343.305(3)(a). If an officer does so, the requesting officer is required to read the following, in relevant part:

> You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both ….
>
> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. *If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties.* The test results or the fact that you refused testing can be used against you in court.

Sec. 343.305(4) (emphasis added).[7]

¶17     Kohn does not argue that he did not consent to the blood draw. Rather, he argues the language in WIS. STAT. § 363.305(4) that "you will be

---

[7] Because the language from the Informing the Accused Form is taken directly from WIS. STAT. § 343.305(4), this court will generally refer to the statute in addressing Kohn's suppression argument.

subject to other penalties" rendered his consent involuntary because the language suggests refusal may result in *criminal* penalties and was therefore coercive and misleading. When reviewing statutory language, this court "ascertain[s] and appl[ies] the plain meaning of the statutes as adopted by the legislature." ***White v. City of Watertown***, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61. "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the language is given its "common, ordinary, and accepted meaning[.]" ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted) ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context of which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

¶18 It is undisputed that a person who refuses a blood or breath test request pursuant to WIS. STAT. § 343.305(4) will be subject to "other penalties." However, § 343.305(4) does not directly specify what those "other penalties" may be. To determine the meaning of that phrase and whether it is coercive or a false statement of the law, as Kohn suggests, this court must consider it within the context of the full sentence in which it appears: "If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties." *Id.*

¶19 Despite the absence of a list of specific penalties, WIS. STAT. § 343.305(4)'s warning that "other penalties" will be imposed arises in conjunction with a reference to a non-criminal penalty (revocation of operating privileges). This suggests the "other penalties" are likewise non-criminal in nature, particularly where, as here, the warning does not otherwise refer to

criminal penalties. A review of the penalties that may be imposed for refusing consent confirms this understanding. *See, e.g.*, WIS. STAT. § 343.301(1g)(am) (ignition interlock device requirement or a 24-7 sobriety program); § 343.305(10)(b)2 (thirty-day waiting period before obtaining an occupational license following refusal); *see also **State v. Prado***, 2021 WI 64, ¶23, 397 Wis. 2d 719, 960 N.W.2d 869 ("[T]he implied consent statute gives those who are capable of responding a choice: submit to the test and risk that the results are presented in court, or refuse the test and *face license revocation and other civil penalties*." (emphasis added)).

¶20 Moreover, having reviewed WIS. STAT. § 343.305(4) within the context of Wisconsin's implied consent law, the reference to "other penalties" in § 343.305(4) cannot be interpreted to mean anything other than what it plainly states—that an individual who refuses to consent will be subject to penalties in addition to revocation of operating privileges. The statute does not refer to criminal penalties, nor does its context imply the imposition of criminal penalties. The admonition that someone who refuses consent will be subject to "other penalties" upon refusal is an accurate statement of the law.[8] The text of

---

[8] We recently reached a similar conclusion as to the accuracy of WIS. STAT. § 343.305(4) in ***State v. Levanduski***, 2020 WI App 53, ¶15, 393 Wis. 2d 674, 948 N.W.2d 411, which addressed the accuracy of the statutory language warning individuals that refusal to submit to a request made pursuant to the implied consent law "can be used against you in court."

§ 343.305(4)—and by extension the Informing the Accused Form mirroring the statutory language—is neither coercive nor misleading.[9]

¶21    Applying this plain language, this court concludes Kohn's consent was voluntary. First, Officer Hurda provided Kohn with a correct statement of law when he warned Kohn he would be subject to "other penalties" if he refused to consent. Second, Officer Hurda's conduct was not misleading, coercive, or threatening. Third, Kohn interacted with police just a few days prior to the arrest at issue here, and that interaction arose under similar circumstances—a traffic stop involving a suspected OWI. Finally, although Kohn was intoxicated at the time he gave his consent to the blood draw, the BAC test results established his BAC was only slightly over the legal limit at the time Officer Hurda read him the Informing the Accused Form and there was no indication Kohn did not understand the request. Accordingly, because Kohn's consent to the blood draw was voluntary, the trial court did not err in denying his motion to suppress.

### B. The trial court properly exercised its discretion in excluding Kohn's trial exhibits.

¶22    Kohn next argues the trial court erred in excluding five exhibits he intended to use during his cross-examination of the State's blood analyst and that exclusion of those exhibits violated his due process right to cross-examination.

---

[9] Our supreme court recently confirmed that a motorist may be subject to civil penalties and evidentiary consequences for refusing to submit to a blood test requested pursuant to Wisconsin's implied consent law. *State v. Dalton*, 2018 WI 85, ¶¶58-61, 383 Wis. 2d 147, 914 N.W.2d 120 (citing *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185 (2016)). What a motorist cannot be subjected to for refusing to consent to a request pursuant to the implied consent law is a criminal penalty. *Dalton*, 383 Wis. 2d 147, ¶¶58-61. Here, Kohn did not refuse consent and he was not subjected to a criminal penalty for refusal. And as explained, he likewise was not threatened with criminal penalties for refusing to consent.

Resolution of this issue requires interpretation and application of WIS. STAT. § 971.23(2m) and (7m) to the facts, which presents a question of law we review de novo. *State v. DeLao*, 2002 WI 49, ¶14, 252 Wis. 2d 289, 643 N.W.2d 480; *see also State v. Rice*, 2008 WI App 10, ¶14, 307 Wis. 2d 335, 743 N.W.2d 517 (2007). Because Kohn violated his discovery obligations under § 971.23(2m)(c), this court must also determine whether he had good cause for doing so, which is a question of law reviewed de novo. *DeLao*, 252 Wis. 2d 289, ¶15; *see also Rice*, 307 Wis. 2d 335, ¶14. "Absent good cause, the undisclosed evidence must be excluded." *Rice*, 307 Wis. 2d 335, ¶14. "[I]f good cause exists, the [trial] court may admit the evidence and grant other relief, such as a continuance." *Id.*

1. Kohn violated WIS. STAT. § 971.23(2m)(c) without good cause.

¶23 WISCONSIN STAT. § 971.23 details the parties' respective discovery obligations in a criminal matter, and subsection (2m) describes the defendant's obligations:

> **(2m)** WHAT A DEFENDANT MUST DISCLOSE TO THE DISTRICT ATTORNEY. Upon demand, the defendant or his or her attorney shall, within a reasonable time before trial, disclose to the district attorney and permit the district attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the defendant:
>
> **(a)** A list of all witnesses, other than the defendant, whom the defendant intends to call at trial, together with their addresses. This paragraph does not apply to rebuttal witnesses or those called for impeachment only.
>
> **(am)** Any relevant written or recorded statements of a witness named on a list under par. (a), including any reports or statements of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary of the expert's findings or the subject matter of his or her testimony, and including the results of any physical or mental examination, scientific test,

experiment or comparison that the defendant intends to offer in evidence at trial.

    **(b)** The criminal record of a defense witness, other than the defendant, which is known to the defense attorney.

    **(c)** Any physical evidence that the defendant intends to offer in evidence at trial.

*Id.* If a party fails to comply with its disclosure obligations, "[t]he court shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply." Sec. 971.23(7m).

¶24 Kohn's argument that he was not required to produce or disclose the five exhibits at issue in response to the State's discovery requests is based on an erroneous interpretation of WIS. STAT. § 971.23(2m). According to Kohn, among the reasons he was not required to produce or disclose the exhibits was that they "were not in the 'possession, custody or control of the defendant' as that phrase is intended to be used under WIS. STAT. § 971.23(2m)" because they were not "within the exclusive possession of the defendant." He also argued he was not obligated to disclose the test results because the testing was not performed by a defense expert.

¶25 Kohn's interpretation is erroneous for multiple reasons. As stated above, "statutory interpretation 'begins with the language of the statute[,]'" and courts give that language its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶45 (citation omitted). The plain language of WIS. STAT. § 971.23(2m) and (2m)(c) is clear: Pursuant to a discovery request, a defendant is required to produce or disclose "[a]ny physical evidence that the defendant intends to offer in evidence at the trial" that is in the

14

"possession, custody or control of the defendant." Nowhere does § 971.23(2m) or (2m)(c) say that such disclosure or production is required only if the physical evidence is within the *exclusive* "possession, custody or control of the defendant." This court will not read words into the statute. *See **State v. Schultz***, 2020 WI 24, ¶49, 390 Wis. 2d 570, 939 N.W.2d 519, *cert. denied*, 141 S. Ct. 344 (2020).[10] Accordingly, pursuant to the State's discovery request, Kohn was required to produce physical evidence he intended to introduce at trial that was in his possession, custody, or control.

¶26 This court also rejects Kohn's argument that he was not required to produce the exhibits in this case because the tests were performed by the State's blood analyst rather than a defense expert. To read WIS. STAT. § 971.23(2m)(c) as only requiring production of documents if such were created by or were otherwise related to a defense expert or a defense expert's testimony would render parts of § 971.23(2m) superfluous, which courts will not do. *See **Kalal***, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").

---

[10] Kohn argues that ***State v. DeLao***, 2002 WI 49, 252 Wis. 2d 289, 643 N.W.2d 480, supports his position that he was not required to disclose or produce the exhibits because the State was deemed to have knowledge of the documents based on the analyst having performed the blood test at the State's request. Kohn's reliance on ***DeLao*** is misplaced. The issue in ***DeLao*** related to a party's disclosure obligations and considered under what circumstances information requested during discovery was within the *disclosing* party's "possession, custody or control." *Id.*, ¶¶21-24. The ***DeLao*** court did not address whether a party was required to disclose information requested pursuant to WIS. STAT. § 971.23 when the requested information may have been within the "possession, custody or control" of the *requesting* party. Moreover, the evidence DeLao requested was a summary of her own statements the State planned to use at trial. ***DeLao***, 252 Wis. 2d 289, ¶7. Despite DeLao arguably having been aware of the statements she had made to officers during the course of the investigation, she was nevertheless entitled to the information requested pursuant to § 971.23(1)(b). This weighs against Kohn's argument that he was not obligated to produce or disclose the exhibits at issue because the documents may have already been in the State's possession.

¶27    Specifically, WIS. STAT. § 971.23(2m)(am) addresses the type of information or documents related to defense expert witnesses that a defendant must disclose or produce in response to a discovery request.  That information and documentation includes an expert's reports or statements, a written summary of the expert's findings or the nature of the expert's testimony, and "the results of any physical or mental examination, scientific test, experiment or comparison that the defendant intends to offer in evidence at trial."  *Id.*  Because § 971.23(2m)(am) already addresses what a defendant must produce or disclose in regard to a defendant's expert witness or witnesses, § 971.23(2m)(c) necessarily must refer to something other than that same information.   Section 971.23(2m)(c) requires a defendant to produce or disclose "[*a*]*ny physical evidence* that the defendant intends to offer in evidence at the trial" if that evidence is in the defendant's "possession, custody or control."  (Emphasis added.)

¶28    Applying these principles to the five exhibits at issue, this court agrees with the trial court that Kohn failed to comply with his discovery obligations as set forth in WIS. STAT. § 971.23(2m)(c).  There is no question the documents were within Kohn's "possession, custody or control"—he had the documents, which he obtained via an open records request, and he had them prior to the trial.[11]   The five exhibits were "physical evidence" Kohn intended to introduce at trial, and he was therefore required to produce the documents in response to the State's discovery request under § 971.23(2m)(c).

---

[11]  It is not clear from the record the exact date Kohn received the documents in response to his open records request.

¶29 Having determined Kohn violated his obligations under WIS. STAT. § 971.23(2m)(c), this court must next determine whether he had good cause for doing so. *See* § 971.23(7m) ("The court shall exclude … evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply."). As the party who failed to comply with discovery obligations, Kohn bears the burden of establishing good cause for failing to comply.

¶30 Kohn offered the following explanations for not producing or disclosing the five exhibits in response to the State's discovery request: (1) the exhibits were not within his exclusive control; (2) the exhibits were not related to a defense expert; and (3) disclosing the documents would give the State an unfair preview of his defense strategy. Kohn's proffered explanations do not establish good cause for withholding the exhibits. First, and as the trial court correctly noted, Wisconsin has abandoned trial by surprise or ambush, which in effect was what Kohn sought to do. *See Haack v. Temple*, 150 Wis. 2d 709, 716, 442 N.W.2d 522 (Ct. App. 1989). Second, Kohn's misinterpretation of what WIS. STAT. § 971.23(2m) requires does not amount to "good cause." *See State v. Gribble*, 2001 WI App 227, ¶31, 248 Wis. 2d 409, 636 N.W.2d 488 (no good cause for failing to produce or disclose a witness's statement where the defendant's reason for failing to do so was based on an erroneous interpretation of WIS. STAT. § 971.23(2m)(am) (1999-2000)). Because Kohn did not have good cause for failing to disclose the exhibits, the trial court did not err in excluding the exhibits at trial.

## 2. Exclusion of the exhibits was not a due process violation.

¶31 In addition to his WIS. STAT. § 971.23(7m) claim rejected above, Kohn argues that exclusion of the five exhibits precluded him from fully cross-examining the analyst and therefore violated his due process rights. "The Sixth Amendment secures to the accused the right to 'be confronted with the witnesses against him.'" *Rogers v. State*, 93 Wis. 2d 682, 692, 287 N.W.2d 774 (1980) (quoting U.S. CONST. amend. VI). That right applies to the states through the Fourteenth Amendment, and "cross-examination is the cornerstone of the right of confrontation." *Rogers*, 93 Wis. 2d at 692-93; *see also State v. Lynch*, 2016 WI 66, ¶41, 371 Wis. 2d 1, 885 N.W.2d 89. "A primary function of the right of confrontation is the right to cross-examine witnesses so that their credibility may be explored and evaluated by the jury." *Rogers*, 93 Wis. 2d at 693. Article I, section 7 of the Wisconsin Constitution provides similar protections. *State v. Hale*, 2005 WI 7, ¶43, 277 Wis. 2d 593, 691 N.W.2d 637. Whether the right to due process was violated is a question of law appellate courts review de novo. *State v. Zamzow*, 2017 WI 29, ¶10, 374 Wis. 2d 220, 892 N.W.2d 637.

¶32 The five exhibits Kohn sought to introduce included documents related to the blood sample test results, the lab report, and maintenance records for the machine used to perform the blood test. Despite not being allowed to introduce the exhibits, the trial court informed Kohn he would have an opportunity to question the analyst about the test results, lab reports, and maintenance procedures, and the trial transcripts reflect that Kohn did so extensively. Kohn cross-examined the analyst as to the testing procedures, the test results, the carryover contamination that occurred during the calibration process, and standard cleaning and maintenance practices for the machines used to test Kohn's blood sample. Kohn also cross-examined the analyst about documents the analyst had

18

actually brought with him to trial, which included many of the documents Kohn had intended to introduce as exhibits. Although the trial court's ruling prevented Kohn from introducing this evidence in a way he believed would more effectively "bring [the evidence] to life for the jury," he fully and unquestionably had an opportunity to extensively cross-examine the analyst regarding the information he sought to introduce via the excluded exhibits. Accordingly, exclusion of the exhibits did not violate Kohn's due process rights.

¶33    In summary, Kohn failed to comply with his discovery obligations as set forth WIS. STAT. § 971.23(2m)(c) without good cause for doing so, the trial court did not err in excluding the five exhibits at trial, and the exclusion of those exhibits did not violate Kohn's due process right to cross-examination.

*C. Denial of Kohn's motions to dismiss and for judgment notwithstanding the verdict was not erroneous.*

¶34    Kohn's final two arguments—that the trial court erred in denying his motions to dismiss and for judgment notwithstanding the verdict as to the bail-jumping charge—are based on the underlying premise that despite having been found guilty of OWI and PAC second offenses for his November 30, 2018 conduct, he nevertheless did not commit a "crime" on that date for purposes of the bail-jumping charge. This is so, he says, because at the time he engaged in the November 30 conduct that resulted in the criminal conviction for second offense OWI and PAC, he had not yet been convicted of an OWI first offense and therefore could not have had the requisite intent to commit a crime required to support a charge for bail jumping. This court is unpersuaded.

¶35    To resolve Kohn's appeal of the trial court's denial of his motions to dismiss and for judgment notwithstanding the verdict, this court must first

determine whether Kohn's conduct on November 30, 2018, is considered a "crime" for purposes of the bail-jumping charge. Answering this question requires interpretation and application of statutory law to known facts, which we undertake independently of the trial court. *City of Cedarburg v. Hansen*, 2020 WI 11, ¶12, 390 Wis. 2d 109, 938 N.W.2d 463.

¶36 The State charged Kohn with misdemeanor bail jumping pursuant to WIS. STAT. §§ 946.49(1)(a) and 939.51(3)(a) based on his having been charged with OWI and PAC second offenses after having been released on bail/bond with a condition that he not commit any additional crimes. Three elements must be satisfied to support a bail-jumping conviction: "(1) the individual must have been arrested for, or charged with, a felony or misdemeanor; (2) the individual must be released from custody on bond; and (3) the individual must have intentionally failed to comply with the terms of his or her bond." *State v. Hansford*, 219 Wis. 2d 226, 244, 580 N.W.2d 171 (1998); *see also* WIS JI—CRIMINAL 1795. Kohn does not dispute that he was charged with a misdemeanor on November 26, 2018, or that he was released from custody on bail/bond that same day. Rather, he challenges only the third element—that he did not fail to comply with the bail/bond terms—and that is where this court focuses its attention.

¶37 Kohn's bail/bond conditions required that he "not commit any crime." *See also* WIS. STAT. § 969.02(4) ("As a condition of release in all cases, a person released under this section shall not commit any crime."). Section 969.02(4) does not define what constitutes a "crime"; however, we answered this question in *State v. West*, 181 Wis. 2d 792, 512 N.W.2d 207 (Ct.

App. 1993).[12] There, we determined WIS. STAT. § 939.12, which defines "crime" as "conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime[,]" applies only to WIS. STAT. chs. 939 to 948 and 951. *West*, 181 Wis. 2d at 796. *West* turned to the common dictionary definition of "crime" and determined that within the context of bond conditions, "crime" means "an offense against the social order … that is dealt with by community action rather than by an individual or kinship group." *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 536 (unabr. ed. 1976)). "Crime" is therefore defined more broadly for purposes of § 969.02(4).

¶38 Having defined what constitutes a "crime" within the context of WIS. STAT. § 969.02(4), this court next determines whether Kohn's conduct underlying the bail-jumping charge was criminal in nature. This court concludes that it was.

¶39 The State alleged Kohn violated the "shall not commit any crime" condition on November 30, 2018, when he was arrested for OWI/PAC. Kohn's conduct that resulted in arrest—driving a vehicle after consuming intoxicants— falls within *West*'s definition of "crime," as it can be characterized as "an offense against the social order." Specifically, when Kohn chose to drive a motor vehicle after consuming an intoxicant, he subjected other members of the community to

---

[12] *State v. West*, 181 Wis. 2d 792, 512 N.W.2d 207 (Ct. App. 1993), involved interpretation of WIS. STAT. § 969.03, which governs release of defendants charged with felonies, whereas WIS. STAT. § 969.02, the statute at issue here, applies to release of defendants charged with misdemeanors. Both statutes contain the same language regarding a prohibition against committing further crimes: "As a condition of release in all cases, a person released under this section shall not commit any crime." *See* §§ 969.02(4), 969.03(2).

potential harm—and he did so just days after having been cited for similar conduct and after having agreed to bail/bond conditions prohibiting him from committing any crimes. Conduct of this nature is in stark contrast to one of the explicit requirements for bail/bond conditions—namely, that the conditions "protect members of the community from serious bodily harm[.]" WIS. STAT. § 969.01(1).

¶40     Wisconsin's progressive penalty structure for OWI offenses supports the conclusion that Kohn's November 30, 2018 conduct was criminal in nature for the purpose of WIS. STAT. § 969.02(4). In Wisconsin, "a first offense is deemed to be a civil, not a criminal offense[;]" however, subsequent violations trigger criminal penalties, and those penalties increase as the number of prior OWI-related convictions increase. *State v. Braunschweig*, 2018 WI 113, ¶15, 384 Wis. 2d 742, 921 N.W.2d 199 (citing WIS. STAT. § 346.65(2)(am) (2015-16)); *see also* WIS. STAT. § 343.307(1). Under this framework, and depending on how quickly a case is resolved, it is not uncommon for an individual to be charged with violating WIS. STAT. § 346.65(2)(am) while charges for prior violations remain pending. *See, e.g.*, *State v. Kollross*, 2019 WI App 30, ¶¶2-4, 388 Wis. 2d 135, 931 N.W.2d 263; *State v. Matke*, 2005 WI App 4, ¶¶1-3, 278 Wis. 2d 403, 692 N.W.2d 265 (2004). While the charge "level" may often match the chronological order of offenses— for example, a first violation charged as a first offense, a second violation charged as a second offense, and so on—this is not always the case. Rather, in some instances, a later charge may be resolved prior to an earlier charge, with the result being that conduct occurring first chronologically may ultimately be penalized more harshly than later conduct. *See, e.g.*, *Matke*, 278 Wis. 2d 403, ¶3; *see also* *State v. Banks*, 105 Wis. 2d 32, 48, 313 N.W.2d 67 (1981) (explaining that penalties for repeated OWI offenses are applied "regardless of the sequence of

offenses"). The order in which OWI charges are resolved therefore determines the extent and severity of the penalty for the related conduct.

¶41    Here, Kohn's November 25, 2018 OWI first citation had not yet been resolved as of November 30, 2018, when he was again arrested and cited for OWI and PAC. The pendency of the earlier matter, however, does not alter the fact that under Wisconsin's progressive OWI penalty structure, a subsequent OWI or PAC violation *could* result in criminal charges. This was sufficient to place Kohn on notice that although resolution of the earlier OWI citation remained pending as of November 30, 2018, a subsequent OWI violation could result in criminal charges and therefore subject him to a charge that he violated his bond conditions. *See Byrne v. State*, 12 Wis. 577, [*519], 580, [*521] (1860) ("[D]efendants are presumed to know the law, and ignorance of the law, even if proved, would be no excuse.").

¶42    Based on the foregoing, Kohn's November 30, 2018 conduct that resulted in the OWI and PAC charges falls within the definition of "crime" as used in WIS. STAT. § 969.02(4), and the State therefore did not impermissibly charge Kohn with misdemeanor bail jumping stemming from that incident.

### 1. Motion to dismiss

¶43    "The test of the sufficiency of the evidence on a motion to dismiss … is whether, considering the state's evidence in the most favorable light, the evidence adduced, believed and rationally considered, is sufficient to prove the defendant's guilty beyond a reasonable doubt." *State v. Scott*, 2000 WI App 51, ¶12, 234 Wis. 2d 129, 608 N.W.2d 753 (quoting *State v. Duda*, 60 Wis. 2d 431, 439, 210 N.W.2d 763 (1973)). "[W]e will not reverse a trial court's denial of a motion to dismiss as long as the jury, viewing the evidence in the light most

favorable to the State's theory, reasonably could have found the defendant guilty beyond a reasonable doubt." *Scott*, 234 Wis. 2d 129, ¶12.

¶44 At trial, the jury heard testimony regarding the November 25, 2018 traffic stop, that Kohn was charged with misdemeanors arising out of that traffic stop, that Kohn agreed to the bail/bond conditions put in place when he was released from custody on November 26, 2018, and that Kohn drove a vehicle while intoxicated and with a PAC on November 30, 2018. Based on the testimony presented at trial, the jury could reasonably conclude Kohn violated the terms of his bail/bond conditions. There was sufficient evidence from which the jury could find Kohn guilty of bail jumping, and accordingly, the trial court did not err in denying his motion to dismiss.

## 2. Motion for judgment notwithstanding the verdict

¶45 This court's review of a denial of a motion for judgment notwithstanding the verdict is de novo. *Fricano v. Bank of America NA*, 2016 WI App 11, ¶19, 366 Wis. 2d 748, 875 N.W.2d 143 (2015). A motion for judgment notwithstanding the verdict does not challenge the sufficiency of the evidence; rather, "such a motion 'admits for purposes of the motion that the findings of the verdict are true, but asserts that judgment should be granted the moving party on grounds other than those decided by the jury.'" *Id.* (citation omitted). A court should enter judgment notwithstanding the verdict "where the facts found by the jury are not sufficient as a matter of law to constitute a cause of action." *Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 177, 557 N.W.2d 67 (1996).

¶46 Kohn's argument that the trial court erred in denying his motion for judgment not withstanding the verdict as to the bail-jumping charge ultimately

depends upon this court resolving the question of whether the State impermissibly charged him with bail jumping in his favor. This court resolved that issue against Kohn, and therefore concludes the trial court did not err in denying the motion for judgment notwithstanding the verdict. Under the circumstances presented here, Kohn's conduct on November 30, 2018, can be construed as criminal in nature for the reasons set forth above, and based on the jury's verdict, the jury found Kohn had been charged with a misdemeanor, that he had been released on bond and was aware of those terms, and that he knowingly violated the terms of those conditions by committing a crime on November 30, 2018.

### III. CONCLUSION

¶47 Kohn voluntarily consented to the blood draw stemming from his November 30, 2018 arrest, and therefore the trial court did not err in denying his motion to suppress. Kohn failed to produce responsive documents to the State's WIS. STAT. § 971.23(2m)(c) discovery requests and failed to establish any good cause for his failure, and therefore the trial court did not err in excluding Kohn's exhibits during trial. Kohn was allowed full cross-examination of the witness he intended to use the excluded exhibits with and therefore was afforded due process. The State did not impermissibly charge Kohn with bail jumping, and therefore the trial court did not err in denying Kohn's motions to dismiss or for judgment notwithstanding the verdict as to the bail-jumping charge.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

25